**Judith PADDISON on behalf of herself and all others simiarly situated**

v.

**The FIDELITY BANK.**

**Civ. A. No. 72–1319.**

United States District Court,
E. D. Pennsylvania.

Sept. 27, 1973.

Wilber Greenberg, Sidkoff, Pincus, Greenberg, Wapner & Golden, Philadelphia, Pa., for plaintiff.

John G. Harkins, Jr., Pepper, Hamilton & Scheetz, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

Plaintiff Paddison has brought this case against defendant Fidelity Bank alleging two causes of action, one under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and one under the Equal Pay Act, 29 U.S.C. § 206(d)(1). Mrs. Paddison alleges basically that she was discriminated against in salary and promotional matters by her employer Fidelity Bank because of her sex in violation of § 2000e, and that part of that discrimination was reflected in the payment of lesser compensation than her male colleagues for work of like kind in violation of 29 U.S.C. § 206(d)(1).

Mrs. Paddison seeks to represent not only herself but those similarly situated pursuant to F.R.Civ.P. 23. The defendant has opposed this vigorously.

The four threshold requirements of Rule 23(a) present no problem here. This Court takes the numerosity of the class, the existence of common questions of fact and law, the typicality of plaintiff's claim, and the fair and adequate representation of the class by plaintiff to have been established by the standards discussed at length in this Court's memorandum in Williams v. Local No. 19, Sheet Metal Workers etc., and Young v. I. T. T. Nesbitt Div. et al., 59 F.R.D. 49 (1973).

The defendant has spent great numbers of pages attempting to attack the plaintiff's typicality by proving that the charges she makes are not true. However, this is not the appropriate time for a motion for summary judgment, even by another name, see *Williams and Young*, supra, at p. 54, and the cases there cited. The issue now is the theoretical typicality of the claims made, not their truth in fact. This Court finds Rule 23(a) satisfied.

Plaintiff claims that both her Title VII action and her Equal Pay Act action qualify for class treatment under both 23(b)(2) and 23(b)(3). The defendant opposes any such designation.

This Court has always been hard put to understand why a defendant in a Civil Rights action opposes its designation

as a class action under 23(b)(2). This is because, first, any such action which could survive a Rule 11 challenge would almost inevitably qualify for such designation, and second, because it is really the defendant who gains, by such designation, in a legal sense at any rate.

As to the first point, see the discussion in 3B Moore's Federal Practice, ¶ 23.10–1 (App.), and the cases cited therein.

■■■ As to the second point, a defendant loses nothing by such designation. All evidence showing a policy of discrimination toward the class is relevant to show discrimination against the individual plaintiff. Thus neither the scope of the proof nor of discovery is broadened by such a designation. Second, as was pointed out in Bailey v. Patterson, 323 F.2d 201 (5th Cir. 1963) at 207, an injunctive decree, even in an individual Civil Rights action necessarily runs in favor of the entire class. Thus the scope of the possible decree is not significantly widened by such a (b)(2) designation.[1] The defendant loses nothing but the defendant gains protection against harassing and repetitive suits from such a designation, since the class is then bound by the outcome as *res judicata,* and if the defendant wins no member of the class may sue him again regarding the same issues. Without such a designation he is open to repetitive suits even if he wins, but does not thereby gain any assurance that class members cannot use facts necessarily established by the case as *res judicata* against him if he loses, because of the demise of the mutuality of estoppel rule in federal question cases after the deci-

sion of Blonder Tongue Laboratories v. University of Illinois Foundation, et al., 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971) (a rule whose passing will be little mourned). Be that as it may, this action qualifies for treatment under 23(b)(2) as a class action and will be so designated.

One explanation for the position of defendant in opposing any class designation is the general uncertainty as to what affect a (b)(2) designation has on the issue of past money damages for class members who are not named plaintiffs.

■■■ So far as this Court is concerned, a designation under 23(b)(2) alone does not entitle the plaintiff to pursue past money damages on behalf of the class. The Advisory Committee Note to 23(b)(2) points out that "[t]his subdivision does not entend to cases in which the appropriate final relief relates exclusively or *predominantly* to money damages." (emphasis supplied). While this sentence is not without some constructional difficulties, this Court takes it as a fairly clear indication that class actions administered solely under (b)(2) were to remain as free of the pitfalls of past money disputes as is consistent with the complete litigation of the causes of action of the named plaintiffs, whether or not those disputes might in some sense be called "equitable."[2] Thus it is our position that pursuant to a (b)(2) designation standing alone, named plaintiffs may recover past damages but unnamed class members may not.

This Court is fully aware of the very strong language in such cases as Robin-

---

[1]. There may be a slight qualification to this statement, in that a class action decree may be directed at conduct which does not directly affect a named plaintiff although it does affect the class under the across-the-board approach to Civil Rights class actions. However, the Court does not consider this a serious detriment to a defendant, especially one maintaining that it does not discriminate at all.

[2]. It is interesting to note in this regard and for the discussion of the cases *contra* which follows, that Rule 23(b)(2) does not speak in terms of "equitable relief" but in terms of *"Injunctive* relief". (emphasis supplied.) This Court feels that the traditional connotations of the word "injunctive" supports its exclusion of past money damage issues even if the Courts *contra* might in some sense be correct in styling such issues "equitable."

son v. Lorillard Corporation, 444 F.2d 791 (4th Cir. 1971), Bowe v. Colgate-Palmolive Company, 416 F.2d 711 (7th Cir. 1971), and Local 186, Int. Pulp, Sulpher & PM Workers v. 3 M Co., 304 F. Supp. 1284 (N.D.Indiana, 1969) to the contrary. In a nutshell, these cases have allowed the very real administrative and substantive problems raised in the determination of back pay awards to individual class members to avoid the scrutiny under the criteria of 23(b)(3) to which they would normally be subject by denominating them equitable relief in the context of a Title VII action. The motivation of these decisions is admirable—a desire for full justice—but full justice includes procedural fairness to a losing defendant as well. Style it what you will, back pay disputes raise all the traditional (b)(3) problems. This Court is committed to the "across-the-board" approach to Civil Rights class actions, *Williams and Young*, supra, Mack v. G. E., 329 F.Supp. 72 (E.D.Pa.1971). The main characteristics of this approach are the broad definition of the class and the issues relevant thereto. The advantage of this approach is the final resolution of very broad issues of the defendant's policy. The appropriate remedial tool is the prospective injunction, supervised by the Court. To accept the implications of the above cases styling money damages as equitable relief for Rule 23 purposes in a Title VII situation puts the District Court on the horns of an intolerable dilemma which is no benefit to plaintiffs. Either the Court must make a broad class designation and with it create a pandora's box of problems on the issue of past damages, or it must narrow the class further than is desirable in the broad-based approach, or it must deny designation of the case under (b)(2) for what are really (b)(3) reasons. Whether past money damages can be properly styled "equitable relief" for some purposes, this Court is convinced that for the purposes of Rule 23 the problems created by past money damages are (b)(3) problems which should be resolved by the criteria of (b)(3) in a separate and explicit determination in each case. It has been suggested that past damage issues in a (b)(2) class action might properly be handled by the creation of "sub-classes", but this does not really solve any problems, or face the fact that many parts of a broad-based (b)(2) Title VII class should possibly not properly have issues of past money damages adjudicated through the class-action device at all. The problems of proof and res judicata are often simply too great. It is not in the best interests of the orderly administration of justice that (b)(2) should be used for (b)(3) functions. This certainly does not mean that this Court believes that class treatment of past money damage issues is never appropriate in a Title VII case. It simply means that the granting of (b)(2) status does not resolve these problems. Insofar as any holdings of non-binding cases are to the contrary, they will not be followed by this Court.

In this case the plaintiff seeks her own past damages and wishes to pursue them for the class. If a (b)(2) designation is not sufficient, she claims the case qualifies for a (b)(3) designation as well.

The Court will not entertain that argument at the present time. In *Williams and Young*, supra, we held that actions maintainable as both (b)(2) and (b)(3) class actions should proceed, at least initially, as (b)(2) actions only, citing 3B Moore's Federal Practice, ¶ 23.50.

The implications and rationale of that position, which will be followed here, bear some further exposition.

During the litigation of whether injunctive relief will be given in any (b)(2) class action, certain factual issues must be resolved. They are inevitably logical antecedents for the probable existence of class handleable past money

damages also. If plaintiffs lose, class handling of past damage issues is clearly inappropriate and a moot issue. If plaintiffs win, the Court is then better able to say whether a (b)(3) designation on the issue of past money damages would be appropriate for the class or a part of the class.

The proper criteria for (b)(3) designation are difficult and unsettled, as anyone familiar with the *Eisen* case[3] is aware. Their exact definition is in a state of flux, but whatever they finally turn out to be, they will necessarily depend on many judgments of fact and situation which are better put off until the (b)(2) litigation has clarified them. Then the Court will know whether we are dealing, for instance, in the across-the-board underpayment of female cashiers $1.00 per hour less than male cashiers, a situation which would lend itself to easy (b)(3) handling, the selection of executives on the basis of delicate evaluations of clinical managerial talents, which would present a difficult case, or a combination which would necessitate the creation of sub-classes for handling the claims of some parts of the total class by (b)(3) methods as "superior to other methods available."

There is one distinct fringe benefit springing from the position this Court has adopted. 42 U.S.C. § 2000e–5(k) authorizes the Court in its discretion to award a reasonable attorney's fee to the prevailing party in a Civil Rights action. Such an award would normally be made to prevailing defendants only if the case had been unreasonably brought, but prevailing plaintiffs, having established forbidden discrimination, would almost always qualify for such an award. Since, as noted, a (b)(2) class action administered as discussed above is not necessarily much more extensive litigation than an individual suit in terms of issues, allowable discovery, or required attorney effort, the same magnitude of attorney's fee is at stake in both circumstances. Since the rights vindicated are invaluable in money terms, the attorney's fee must be awarded purely on the basis of compensation for the time invested. There is no monetary basis for arguing for a larger fee on a contingency fee analogy. Thus the litigation is kept free of claims that it is merely brought to coerce a settlement favorable to the financial ambitions of plaintiff's attorney, at least until the more important issues under the Civil Rights Act are resolved. It is true that, should plaintiffs prevail, the action may or may not then continue in whole or part as a (b)(3) action for past money damages, but at that point the argument from defendants that the purpose of the litigation was merely the financial interest of plaintiff's attorney would lose most of its persuasive force.

Class actions under Rule 23(b)(2), properly understood and administered, are useful and effective tools for the final determination of broad disputes concerning alleged discrimination. The classes involved are capable of exact definition, in the sense that any person coming before the Court, or another Court in subsequent litigation, can with fair ease be seen to be within or without the class for *res judicata* purposes. But the specific identity of every class member is usually impossible to determine. This is one of the reasons notification may be dispensed with. It has bothered some observers, on due process grounds, that persons may be bound by the result of an action of which they have no notice. However, the issue of the existence of a policy of discrimination is one that demands a mechanism for final resolution in our society. To require actual notification of all parties would tend to

---

3. Eisen v. Carlisle and Jacquelin et al., 370 F.2d 119 (2nd Cir. 1966), cert. denied 386 U.S. 1035, 87 S.Ct. 1487, 18 L.Ed.2d 598 (1967) ; 391 F.2d 555 (2nd Cir. 1968) ; 479 F.2d 1005 (2nd Cir., May 12, 1973) ; 41 F.R.D. 147 (S.D.N.Y.1966) ; 50 F.R.D. 471 (S.D.N.Y.1970) ; 52 F.R.D. 253 (S.D.N.Y. 1971) ; 54 F.R.D. 565 (S.D.N.Y.1972).

defeat this. To allow class members to opt out would defeat it entirely. The existence of a policy of discrimination is a group question[4] which must have a mechanism for resolution with group wide finality. This was the *raison d'etre* for the creation of (b)(2) class actions, and no favor would be done to group members to hamstring its effectiveness with notice requirements which are not practically possible. It should be noted that individual causes of action for isolated incidents of discrimination are not affected by an adverse judgment on the existence of a policy of discrimination. This being so, this Court cannot see that the provision of a fair and necessary mechanism for the final determination of the existence of such a policy, yea or nay, can rightly be called a denial of due process of law. To maintain the usefulness of (b)(2), its binding nature must be maintained. To maintain this while minimizing due process considerations is yet another reason why past money damage issue of class members other than named plaintiffs must be carefully kept out of (b)(2) class actions.

■ The final issue for consideration here is the class action status of plaintiff's Equal Pay Act claim. The Equal Pay Act, as part of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., is subject to the following statutory qualification on representative actions under 29 U.S.C. § 216(b):

> "No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."

The defendant argues that this action makes Rule 23 class actions unavailable in an Equal Pay Act case. The plaintiff has constructed an ingenious argument that the promulgation of Federal Rule 23 by the power of the Enabling Act, 28 U.S.C. § 2072 supercedes any previous inconsistent statutory procedural sections. The weakness to the plaintiff's argument is that the Advisory Committee Note to Rule 23 states that "[t]he present provisions of 29 U.S.C. § 216(b) are not intended to be affected by Rule 23 as amended." Thus, the rules laid down by previous decisions concerning the interpretation of § 216(b) are still valid. This Court is aware that a seemingly contrary result was reached in Laffey v. Northwest Airlines, 321 F. Supp. 1041 (D.C.C., 1971), without discussion, but feels bound to go the other way.

The heart of § 216(b) is that no person may be bound on an Equal Pay Act suit without positive assent to the suit. A party must affirmatively "opt in" under § 216(b), while a party who fails to "opt out" under 23(c)(2)'s notice requirement for the maintenance of a (b)(3) action is bound, and class members under (b)(2) are bound without notice. Thus this Court concludes that the Rule 23 class action device is not available in an Equal Pay Act case. The Court is aware that it could modify the (c)(2) form of notice to meet the requirement of § 216(b), but does not feel authorized by Rule 23 to put the Court's imprimatur on such notice.

Accordingly, this case will be designated a class action under Rule 23(b)(2) on the Civil Rights claim only. The class will be defined as:

> All of those females who are and were employed by the defendant from July 27, 1970 until the present;

> All of those females who sought employment with the defendant from

---

4. The requirement that the named plaintiff appears to have been in a position to suffer from the alleged policy and thereby has standing to challenge it does not detract from the group nature of the conflict, but merely insures the threshold existence of a concrete case or controversy.

July 27, 1970 to the present, but were not offered jobs because of the defendant's denial of equal employment opportunities to women;

All of those females qualified to fill any job opening, vacancy, or new position which was available at defendant from July 27, 1970 to the present, but who did not seek the said job opening because of a lack of knowledge of same due to defendant's denial of equal employment opportunities to women;

All of those females who sought and were offered employment at defendant, but who declined same because they were offered a position by the defendant which was below the job level or job category for which they were qualified.

Designation under Rule 23(b)(3) will be denied pending the outcome of the (b)(2) action. Class action designation of the Equal Pay Act claims will be denied. Notice to the class will not be required at this time.