Melvin **FREEMAN**, for himself, and for all others similarly situated

v.

**MOTOR CONVOY, INC.**, et al., Douglas Spencer, Intervenor.

**Civ. A. No. 16185.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Nov. 6, 1974.

On Motion for Reconsideration
Jan. 9, 1975.

**198**

Howard Moore, Jr., Atlanta, Ga., Jack Greenberg, New York City, John R. Myer, Joseph Ray Terry, Jr., Atlanta, Ga., for plaintiffs.

Robert L. Mitchell, Wilson, Wilcox & Wilson, Atlanta, Ga., for defendants.

## ORDER

RICHARD C. FREEMAN, District Judge.

This is an action brought pursuant to Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e et seq. (hereinafter Title VII), and 42 U.S.C. § 1981 to recover for alleged racial discrimination in employment. Plaintiffs seek declaratory and injunctive relief as well as money damages in the form of an award of back pay. A pretrial conference was held and a pretrial order entered on August 12, 1974. At that time plaintiffs expressed their desire to obtain an order certifying this action as a class action and defining the appropriate class or classes prior to trial. This issue is presently before the court.

In the pretrial order, plaintiffs submitted a tentative definition of a class composed of two subclasses represented by plaintiff Freeman and intervenor Spencer. The first tentative class was described as all black employees of the shop at the Atlanta facility of Motor Convoy, Inc. The class represented by intervenor was described as all black employees of defendant within the jurisdiction of the Southern Conference of Teamsters who have been excluded from employment as "over-the-road" truck drivers. As such, plaintiffs were in effect seeking to bring this action within the holding of Sagers v. Yellow Freight System, Inc., 58 F.R.D. 54 (N.D.Ga. 1972), with respect to certification of the class. If the class were defined in this manner, this court would not be reluctant to grant plaintiffs' request for certification; however, the class defined in plaintiffs' motion for a class action order is somewhat broader. Plaintiffs now seek to represent "all past and present black employees of Motor Convoy, Inc. within the area of the Southern Conference of Teamsters; all black persons in that area who have unsuccessfully applied for employment with Motor Convoy since July 2, 1965, and all black persons who will apply for work or be employed by Ryder [sic.] in that area in the future." In addition, plaintiffs seek an order directing defendants to mail and post notice of this action to all members of the proposed class. Although most of plaintiffs' contentions with respect to the class action aspects of this case are not contested by defendants, in light of the recent developments in this area of the law, a final ruling on this issue is inappropriate. As a result, a general class will be defined at this time, subject to amendment or division into subclasses as the need for such action becomes apparent.

Before considering the merits of this issue, it should be noted that questions concerning the sufficiency of a class action under Rule 23, Fed.R.Civ.P., are subject to a three-step inquiry. First, the court must determine whether the prerequisites to bringing the class action set forth in Rule 23(a) have been fulfilled. Secondly, the court must determine the nature of the particular action under Rule 23(b) in order to conclude the last step in the inquiry, a determination of the appropriate class and the means of adequately protecting the interests of that class by sufficient notice. In this case, it is appropriate to discuss these steps in two contexts: (1) Defining the class and (2) the requirement for notice.

### DEFINING THE CLASS

In this action, plaintiffs raise an "across-the-board" claim of continuing discriminatory treatment by defendants, in that blacks are restricted to lower paying, less desirable jobs, lower pay rates and job titles, and otherwise denied advancement because of a discriminatory seniority system perpetuated by "no-transfer" rules incorporated into defendants' collective bargaining agreement. More specifically, plaintiff Freeman contends that he was denied full pay as a mechanic while performing mechanic's work, from July 2, 1965, until finally classified as a mechanic on January 10, 1970; that since that date he has not been granted equal treatment in terms of the perquisites of his job; and that he has been prevented from obtaining a position as over-the-road driver. In addition, plaintiff complains of an allegedly retaliatory discharge as a result of his efforts to obtain equal employment opportunity by pursuing his remedies under Title VII. Plaintiff alleges that he properly raised these contentions in three complaints filed before the EEOC; however, these complaints have not yet been made part of the record. Intervenor Spencer alleges that he was repeatedly laid off or "bumped" by white employees with less company seniority, but holding job seniority in higher paying all-white job classifications. Intervenor contends that he lost significant amounts of back pay and seniority because of the layoffs and because of defendants' refusal to recall him into all-white job classifications, including the position of over-the-road driver.

In support of their motion for a class action order, plaintiffs first argue that they have fulfilled all the prerequisites of Rule 23(a): (1) that the class they seek to represent, all employees of Motor Convoy, Inc. within the Southern Conference of Teamsters, is so numerous that joinder of all members is impracticable; (2) that the questions of law and fact relating to defendants' alleged discriminatory practices are common to the class; (3) that since they were placed only in the lower paying jobs traditionally available to blacks and locked into those jobs by defendants' practices, their claims are typical of the claims of the class; and (4) that their attorneys are well experienced and highly competent in the field of employment discrimination, that the suit is not collusive, and that plaintiffs' interests are not antagonistic to those of the class. Although defendants do not contest plaintiffs' specific contentions regarding compliance with Rule 23(a), defendants do object to defining the class to include all past and future applicants for employment with Motor Convoy, Inc. Defendants contend that plaintiff and intervenor do not have standing to assert claims in behalf of job applicants since "[n]either plaintiff nor intervenor is aggrieved as an applicant for employment." Furthermore, defendants rely on Oatis v. Crown Zellerbach Corp., 398 F.2d 496 (5th Cir. 1968), in support of the proposition that a claim against defendant Motor Convoy, Inc. for discrimination with respect to applicants for employment must first be presented to the EEOC before the named parties may raise that claim in a Title VII suit.

The conditions precedent to bringing a class action under Title VII have been continually relaxed and liberalized since the date of the *Oatis* case, in order to effectuate to the fullest extent the remedial purposes of the Act. However, this court is not aware of any cases permitting a plaintiff, who is an employee, to assert claims of unknown persons who are not, and have never been employees, when those claims have not yet been presented to the EEOC.[1] Notwithstanding the limitation provided by § 706(a)

---

1. The decision in Franks v. Bowman Transportation Co., 495 F.2d 398 (5th Cir. 1974) does not indicate otherwise. The class in that case was composed of job applicants, as well as employees; however, one of the named plaintiffs, although an employee at

of Title VII and the *Oatis* case, if the class were defined that broadly, this court would have substantial questions regarding protection of the interests of the unnamed members of the class. *See generally* Johnson v. Georgia Highway Express, Inc., 417 F.2d 1122, 1125–1127 (5th Cir. 1969) (Godbold, J., concurring) (an overbroad framing of the class may operate to deprive absent members of due process). Judge Godbold's admonition is particularly applicable in cases where the named parties seek to represent prospective job applicants, for, in such circumstances, an unfavorable disposition of the litigation would bind them and prevent redress of discrimination not yet inflicted. Harvey v. Stein Printing Co., Civil Action No. 17185 (N.D.Ga., Feb. 22, 1973). As a result, this court rejects plaintiffs' contention that they may represent and assert the claims of past and prospective job applicants who were never employed in any capacity by defendant Motor Convoy, Inc.

Accordingly, plaintiffs' motion for a class action order is GRANTED. The class shall include all black employees of Motor Convoy, Inc., excluding office and supervisory personnel, who are employed, or who were employed and have been discharged or laid off since July 2, 1965,[2] within the Southern Conference of Teamsters, that is, the states of Alabama, Arkansas, Florida, Georgia, Louisiana, Mississippi, Oklahoma, Tennessee and Texas. This definition shall be subject to modification, either by restriction, expansion, subdivision or otherwise as the need for such action becomes apparent. *See* Franks v. Bowman Transportation Co., 495 F.2d 398 (5th Cir. 1974); Rule 23(c)(1).

## DEFINING THE ACTION AND APPROPRIATE NOTICE

In many cases it may be inappropriate to define the class and allow the class action before determining the nature of the class action itself, that is, which subdivision of Rule 23(b) applies. In light of recent developments in the law relating to class actions, this determination is critical; however, the lines of distinction in this area are somewhat blurred, as illustrated by the fact the Court of Appeals for the Fifth Circuit has previously ruled that a class action under Title VII attacking discriminatory practices by trucking industry defendants may be brought under either subdivision (2) or subdivision (3) of Rule 23 (b). Bing v. Roadway Express, Inc., 485 F.2d 441, 447 (5th Cir. 1973). Nevertheless, the trend of authority in this circuit supports the proposition that cases such as this are more properly brought as (b)(2) cases. *See id.*; Johnson v. Georgia Highway Express, Inc., *supra.* More recently, the Court of Appeals has ruled that unnamed class members may be awarded back pay in actions brought under (b)(2). Baxter v. Savannah Sugar Refining Corp., 495 F.2d 437 (5th Cir. 1974); Franks v. Bowman Transportation Co., 495 F.2d 398 (5th Cir. 1974); Pettway v. American Cast Iron Pipe Co., 494 F.2d 211 (5th Cir. 1974). The *Franks* court described the basis for its ruling as follows:

> [N]either the letter nor the spirit of Title VII precludes back pay awards to non-named class members when only the class representative has filed an appropriate EEOC complaint.
>
> Nor does Fed.R.Civ.P. 23(b)(2) prohibit back pay awards to non-

the time of the suit, had previously been denied employment because of his race and had raised that complaint before the EEOC.

2. In this jurisdiction, back pay awards may not cover any period of employment prior to the period of the applicable state statute of limitations for Title VII actions, and, in any event, back pay may not be awarded for a period prior to July 2, 1965, the effective date of Title VII. Pettway v. American Cast Iron Pipe Co., 494 F.2d 211, 255–256, 258 (5th Cir. 1974). The date chosen to determine class membership may be amended when the applicable period of limitations becomes apparent.

named class members in a class action under that subdivision of the rule. Pettway v. American Cast Iron Pipe Co., supra; Robinson v. Lorillard Corp., 4th Cir. 1971, 444 F.2d 791, 802, cert. dismissed 404 U.S. 1006, [92 S.Ct. 573, 30 L.Ed.2d 655.] It is true that Rule 23(b)(2) refers only to "injunctive relief or corresponding declaratory relief" and "does not extend to cases in which the appropriate final relief relates *exclusively* or *predominantly* to money damages." [citation omitted]. But this Title VII action cannot be characterized as one seeking "exclusively or predominantly money damages." . . . [B]ack pay awards under Title VII (and under § 1981 to the extent that a § 1981 corresponds to a Title VII action) are not damages, as such, but an integral part of the equitable remedy. Even if back pay is considered as equivalent to damages under Rule 23, in this case back pay is not the exclusive or predominant remedy sought.

*Id.* 495 F.2d at 422. Although this language falls short of adopting a *per se* rule to the effect that Title VII actions for discriminatory employment practices seeking injunctive relief and back pay may invariably be brought pursuant to Rule 23(b)(2) it is persuasive in light of the circumstances in the instant case. Unfortunately, however, this opinion did not specify an appropriate method for calculating a class-wide back pay award, (*but see* Pettway v. American Cast Iron Pipe Co., *supra*, 495 F.2d at 260–263,) and perhaps more importantly, the Court did not specify the type of notice to be afforded to potential claimants to ensure that their rights to an award are adequately protected. Similarly, the

*Franks* court did not need to consider which guidelines would be appropriate for determining when a Title VII action should be deemed to be "predominately or exclusively" for money damages and hence classified as an action brought pursuant to Rule 23(b)(3).

The distinction between a (b)(2) and (b)(3) action is critical in two respects. First, if the action is a (b)(3) action, individual members of the class may "opt out", thereby excluding themselves from the class pursuant to Rule 23(c)(2)(A), whereas all members of the class are bound by the judgment in a (b)(2) action, even if they are not individually notified. Similarly, in a recent landmark case, the Supreme Court has ruled that all potential members of the class in a (b)(3) action must be individually notified of their rights under 23(c)(2),[3] and the cost of such notice must be borne by plaintiffs. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 94 S. Ct. 2140, 40 L.Ed.2d 732 (1974). This court is not aware of any cases discussing the effect, if any, of the *Eisen* ruling on Title VII back pay awards, with respect to the nature of the notice that should be provided to potential claimants. This question is particularly important in light of developments in the area of back pay in other jurisdictions, including a recent ruling that a Title VII case seeking back pay on behalf of discharged employees is a (b)(3) suit which requires notice and an opportunity to "opt out" pursuant to Rule 23(c)(2). Air Line Stewards & Stewardesses Ass'n v. American Airlines, Inc., 490 F.2d 636 (7th Cir. 1973), cert. denied sub nom. Air Line Stewards & Stewardesses Ass'n v. Zippo, 416 U.S. 994, 94 S.Ct. 2406, 40 L.Ed.2d 773 (1974). The rather confusing effect of

---

3. Rule 23(c)(2) provides, in relevant part, as follows:

In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.

▮▮▮▮▮▮▮▮▮▮

this case on the law in this area has been described as follows:

> Though plaintiffs rely upon Robinson v. Lorillard Corp., 444 F.2d 791, 801–802 (4th Cir. 1971), cert. dis. 404 U.S. 1006 [92 S.Ct. 573, 30 L.Ed.2d 655], for the proposition that when demands for back pay or reinstatement are combined with requests for equitable relief, the class is properly maintainable under Rule 23(b)(2) as to all forms of relief, the Robinson interpretation of Bowe v. Colgate-Palmolive Co., 416 F.2d 711 (7th Cir. 1969) is not persuasive in light of Air Line Stewards and Stewardesses, supra. Bowe made it clear that claims for back pay and reinstatement were properly made by means of class actions, but did not specify that the nature of the action should be one under Rule 23(b)(2). Air Line Stewards and Stewardesses makes it clear that the appropriate procedure for such claims is under Rule 23(b)(3). . . .

Chrapliwy v. Uniroyal, Inc., 18 Fed.R. Serv.2d 517, 518 (N.D.Ind., 1974). The recently decided cases in the Fifth Circuit make this issue somewhat less clear; and it is apparent that the issue must ultimately be resolved by the Supreme Court.

▮▮ ▮▮ Until this issue is resolved, it is the rule in this jurisdiction [4] that a class-wide award of back pay in a Title VII suit brought pursuant to Rule 23(b)(2) is appropriate as an adjunct to the equitable relief, assuming the case is not one seeking predominately money damages. In light of the difficulty in determining this latter question,[5] the court will adopt a bifurcated approach to this action. See Paddison v. Fidelity Bank, 60 F.R.D. 695 (E.D.Pa.1973); cf. Baxter v. Savannah Sugar Refining Corp., supra. In Paddison, the court rightly concluded that recent developments in the law regarding Title VII class actions placed trial courts on "the horns of an intolerable dilemma", in effect caused by abortive efforts to maintain a broad "across-the-board" approach in an attempt to effectuate equitable relief in the context of a (b)(2) action, while nevertheless being presented with individualized questions

---

4. This court is unwilling to rule that because the Court of Appeals for the Seventh Circuit has implicitly overruled those cases forming the basis for the Fourth Circuit opinion in Robinson v. Lorillard Corp., supra, the Fifth Circuit will now reappraise its stand in this area as well, merely because it relied on the same line of cases. On the contrary, with all due respect to the opinion of the Court in Air Line Stewards & Stewardesses Ass'n, supra, this court believes that the bifurcated approach to the problem discussed below is a more appropriate solution than ruling that the entire action must proceed under (b)(3), thereby imposing the attendant obligations required by the (c)(2) notice requirement upon the plaintiffs.

5. As noted above, the Court of Appeals has not yet adopted a per se rule that all Title VII actions involving questions of back pay may be brought under Rule 23(b)(2); however, the question of whether or not an action should be classified as a (b)(2) action or a (b)(3) action is a difficult one at best. In light of the Supreme Court's opinion in Eisen, it may be argued that this question should be decided at a preliminary stage in the proceeding; however, in Title VII actions such as this, a final determination of this question may be more appropriately deferred until the proper parameters of the action become apparent. If indeed, subsequent to the initial certification of the class, it later becomes apparent that the action is "predominately" or "exclusively" concerned with the question of a potential monetary award, or if certain members of the general class are primarily interested in monetary relief, it may become necessary to rule that the entire action, or a portion thereof, should be considered under the provisions of Rule 23(b)(3). In that event, it may become necessary to impose the (c)(2) notice requirement on the class representatives, or alternatively, subdivide the class into (b)(2) and (b)(3) subclasses, thereby easing the overall burden required by the (c)(2) notice requirement. Cf. Eisen v. Carlisle & Jacquelin, supra, 417 U.S. at 179, 94 S.Ct. at 2153 n. 16; id. at 2153–2156 (Douglas, J., concurring); Paddison v. Fidelity Bank, 60 F.R.D. 695 (E.D.Pa.1973).

regarding back pay. As a result the court decided that "[i]t is not in the best interests of the orderly administration of justice that (b)(2) should be used for (b)(3) functions." *Id.* 60 F.R.D. at 698. Instead, the court concluded that it should proceed with the (b)(2) aspects of the case, since the resolution of the (b)(2) question would greatly simplify the eventual resolution of the (b)(3) aspects in the case, including the potential redefining of the class in terms of several subclasses. This approach is equally applicable in the instant action, and in effect has been suggested by the recent cases in this Circuit. Under this approach, the court must first be satisfied that the evidence warrants a finding that the class represented by the named plaintiffs has suffered from the discriminatory policies of the defendants. Then, "[a]ssuming that the class does establish invidious treatment, the court should . . . proceed to resolve whether a particular employee is in fact a member of the covered class, has suffered financial loss, and thus [is] entitled to back pay or other appropriate relief." Baxter v. Savannah Sugar Refining Corp., *supra*, 495 F.2d at 444. *See also* Pettway v. American Cast Iron Pipe Co., *supra*, 494 F.2d at 256–257.

 Accordingly, this action is hereby ordered to proceed as a class action pursuant to Rule 23(b)(2). The class shall include, subject to redefinition as required, all black employees of Motor Convoy, Inc., excluding office and supervisory personnel, who are employed, or were employed and have been discharged or laid off since July 2, 1965, within the Southern Conference of Teamsters. Defendants are hereby ordered to provide the potential class members with adequate notice [6] of this action, as set forth in Appendix A to this order, by posting such notice in their terminals and truck-ing offices within the aforementioned geographical area.

It is so ordered.

## APPENDIX A

### NOTICE TO CLASS

TO: ALL BLACK EMPLOYEES OR FORMER BLACK EMPLOYEES WHO HAVE BEEN EMPLOYED BY MOTOR CONVOY, INC. WITHIN THE SOUTHERN CONFERENCE OF TEAMSTERS SINCE JULY 2, 1965.

Please take notice that there is now pending in the United States District Court in Atlanta, Georgia, a civil action against Motor Convoy, Inc., and Teamsters Local Union No. 528, Civil Action No. 16185.

This lawsuit charges the company with racial discrimination in employment alleged to exist by reason of the job assignments of black employees. More specifically, the defendants are charged with discriminating against the named plaintiffs, Mr. Melvin Freeman and Mr. Douglas Spencer and other black persons with respect to compensation, terms, conditions, and privileges of employment. In addition, defendants are charged with maintaining seniority rules which deter black employees from transferring into road jobs by forcing individuals who transfer to forfeit their accumulated seniority rights for layoff and bidding purposes. Defendants are also charged with maintaining racially segregated job categories.

The lawsuit seeks to gain the right for black employees to enjoy equal opportunities for employment, including the right to transfer to jobs as over-the-road drivers with full seniority, as well as the right to equal working conditions, equal pay, and equal promotional opportunity. In addition, the lawsuit

---

6. Although notice in a (b)(2) action is not mandatory at this point, under the circumstances of this case, some form of preliminary notice is warranted. *See* Bing v. Roadway Express, Inc., *supra*, 485 F.2d at 448–449.

APPENDIX A—Continued

seeks to recover an award of back pay for all employees who have been discriminated against in terms of pay, job opportunity, and layoffs since July 2, 1965.

If you desire additional information about this lawsuit, including the names of the attorneys representing the named plaintiffs, or if you wish to join the lawsuit as an individual, in addition to being present before the court as a part of the class, you should contact the undersigned within thirty (30) days of the date of this notice. You will receive additional notice concerning your potential entitlement to an award of back pay, if any, at a future date.

/S/ COMPANY REPRESENTATIVE

ON MOTION FOR RECON-
SIDERATION

In this motion, brought pursuant to Rule 59(e), Fed.R.Civ.P., plaintiffs seek reconsideration of the prior order entered in this action on November 6, 1974, to the extent that the class defined in that order failed to include black persons who have previously applied for positions as over-the-road drivers with defendant but were never employed by defendant in any capacity. Relying on the authority of Long v. Sapp, 502 F.2d 34 (5th Cir. 1974), plaintiffs seek an order redefining the class to include "all black persons who have applied for positions with the defendant Motor Convoy, Inc. as over-the-road drivers . . . and all black persons who would have applied for positions as over-the-road drivers . . within the Southern Conference, but for the defendant Motor Convoy, Inc.'s discriminatory employment policies and practices." *See id.* at 40. In support of this motion, plaintiffs argue as follows:

While there are varying factual situations, as defendant suggests, in which its practices discriminate against blacks, the overriding thread of commonality which affects applicants, incumbent employees and dischargees here is racial discrimination in employment by the defendant. [citation omitted]. Indeed, the common facts and practices regarding discrimination in hiring blacks in ORD positions are identical for black employees and applicants. A determination by this Court of racial discrimination against blacks by defendant . . . if it did not provide relief, would determine the question for both present employees and applicants. *To afford relief to present black employees but not black applicants would present an injust anomaly.* (Emphasis added).

Plaintiffs also state that available statistics present a prima facie case of discrimination against black applicants for over-the-road driver jobs, and that testimonial and documentary evidence to be introduced at trial will prove invidious racial discrimination against black applicants.

■ The arguments of plaintiffs in support of this motion are persuasive and are founded on sound legal principles; however, they rest in part on a misconception regarding the effect of the tentative class definition set forth in the prior order. The above-quoted portion of plaintiffs' argument in support of this motion indicates that plaintiffs are concerned that the order limiting the class to present and past employees rather than employees as well as job applicants will preclude the presentation of evidence regarding a pattern or practice of racial discrimination with respect to job applicants and accordingly preclude the framing of appropriate equitable relief. As discussed below this supposition is incorrect, for it was not the purpose of the prior order to limit the scope of inquiry in this suit. On the contrary, the tentative class definition set forth in the prior order was limited to employees in an effort to achieve an accommodation between the need for an immediate certification of the class, and

the paucity of evidence submitted regarding plaintiffs' standing to represent the class. This evidence should show standing both in terms of the "typicality" requirement of Rule 23(a)(3), *see* Kinsey v. Legg, Mason & Co., Inc., 60 F.R.D. 91, 99–100 (D.D.C.1973) (divergent factors regarding hiring decisions for different job categories precludes named plaintiff's representing a class of prospective employees for all job classifications), as well as in terms of the question of whether or not the named plaintiffs may be considered "aggrieved" as applicants for employment within the meaning of § 706(a) of Title VII. Oatis v. Crown Zellerbach Corp., 398 F.2d 496 (5th Cir. 1968). *See* Sanchez v. Standard Brands, Inc., 431 F.2d 455 (5th Cir. 1970); King v. Georgia Power Co., 295 F.Supp. 943 (N.D.Ga. 1968). Of course, the court recognizes that the rule limiting the scope of judicial inquiry to the scope of the investigation that could reasonably be expected to grow out of the charge of discrimination filed with the EEOC, Sanchez v. Standard Brands, Inc., *supra* at 466, does not invariably control the class representation question; however, in employment discrimination cases, it is difficult to determine the standing question in the context of Rule 23(a) without some reference to the technical standing requirements of Title VII.[1] Thus, absent some factual showing regarding the extent of the complaints filed with the EEOC, and absent any showing regarding the scope of the inquiry and the scope of the conciliation efforts flowing from the complaints, the court is unwilling to reconsider its prior ruling that the named plaintiffs may not represent a class composed of black persons who applied for employment as over-the-road drivers with defendant but were never hired in any capacity.

On its face, this ruling seems to conflict with the decision of the Court of Appeals for the Fifth Circuit in Long v. Sapp, *supra*. In that case, plaintiff, a former employee of the Jackson County, Florida, Commodity Distribution Program, brought an action for back pay, reinstatement, and injunctive relief, claiming violations of §§ 1981, 1983, and 1985 of Title 42, the Civil Rights Act of 1871, as well as constitutional deprivations. After an evidentiary hearing, the lower court denied relief, dismissing plaintiff's class action claim because plaintiff, as a former employee, could not represent a class of past and prospective job applicants, since "she could not show herself to have been in a position to suffer the kind of discrimination she alleged had been suffered by the rest of the proposed class." *Id.* at 42. The Court of Appeals reversed, concluding that the district court ruling was erroneous on the basis of controlling decisional law regarding the proper scope of class actions in employment discrimination cases. Noting that the "across the board" approach to employment discrimination claims adopted in this Circuit provides an effective means for implementing the purposes embodied in the civil rights acts, the Court held as follows:

> Mrs. Long directs her claims at racially discriminatory policies that she alleges pervade all aspects of the employment practices of Jackson County. Having shown herself to be a black and a former employee, albeit lawfully discharged, she occupies the position of one she says is suffering from the alleged discrimination. She has demonstrated the necessary nexus with the proposed class for membership therein. As a person aggrieved, she can represent other victims of the same policies, whether or not all have experienced discrimination in the same

1. *See* note 2 *infra*.

way. [citation omitted]. The scope of the claim is broad enough to include former, as well as present and prospective employees.

*Id.* at 43. This language is persuasive with respect to the instant motion and would compel redefinition of the class as plaintiffs have requested, were it not for two factors. First, the *Long* case ruling was based on a full factual development deemed sufficient by the Court of Appeals to warrant a finding that plaintiff had set out a "prima facie case of racial discrimination in employment practices." *Id.* at 41. Secondly, the ruling of the appellate court only reached the question of whether the named plaintiff had a sufficient nexus with the proposed class to have standing to assert classwide discrimination claims. The action was remanded for a determination of the question of whether or not the other prerequisites of Rule 23 would preclude certification of the proposed class. Furthermore, the Court specifically noted that the resolution of this question might require further development of the facts. *Id.* at 43. Thus, considering the present state of the record in the instant case, Long v. Sapp does not require broadening the class definition certified by the November 6, 1974 order.[2]

As noted above the factual development in this matter to date is simply insufficient to warrant redefining the class at this stage. A motion for class action certification should not be used as a substitute for a motion for summary judgment or for a speedy resolution of the merits of the suit, *see* Huff v. N. D. Cass Co., 485 F.2d 710, 712 (5th Cir. 1973); however, detailed class definitions often require extensive consideration of the ultimate factual issues. *See* Bradley v. Southern Pacific Co., Inc., 486 F.2d 516 (5th Cir. 1973); Kohn v. Royall, Koegel & Wells, 496 F. 2d 1094 (2d Cir. 1974). As a result, such definitions may be more appropriately deferred until completion of the trial on the merits. In fact, in noting the potential for redefinition and subdivision of the class, this court specifically recognized that the final parameters of the class would not be fully determined until the completion of a trial on the merits. Furthermore, deferring a ruling on this matter is consistent with

2. It is possible to argue that Long v. Sapp may be distinguished on the ground that it was not brought under Title VII and hence did not involve consideration of the jurisdictional prerequisites incorporated in that act. This argument must be rejected in light of the consistent authority recognizing the separate and independent vitality of the § 1981 portions of an employment discrimination suit brought under Title VII. *See* Waters v. Wisconsin Steel Works of International Harvester Co., 502 F.2d 1309 (7th Cir. 1974); Long v. Ford Motor Co., 496 F.2d 500 (6th Cir. 1974); Caldwell v. National Brewing Co., 443 F.2d 1044 (5th Cir. 1971). The trend of authority in this area supports the proposition that § 1981 claims are not subject to a requirement for exhausting remedies under Title VII, Waters v. Wisconsin Steel Works of International Harvester Co., *supra* at 1315; however, these same cases generally rule that "in fashioning a substantive body of law under section 1981 the courts should, in an effort to avoid undesirable substantive law conflicts, look to the principles of law created under Title VII for direction." *Id.* at 1316. *See* Long v. Sapp, *supra* at 39 n. 2. Thus some reference to Title VII is appropriate in considering the issue *sub judice,* and, in any event, it is clear that the instant motion should not be granted solely on the authority of § 1981 and Long v. *Sapp:*

Even without resort to any carry over from considerations of Title VII's emphasis upon voluntary compliance, plaintiff may not proceed for anyone else simply on the basis of § 1981. . . . The two actions in the context of employment should be harmonized in substance and procedure. Obviously there should not be one class for Title VII purposes and another for § 1981 purposes. Plaintiff is not the party to complain about discrimination . . . under § 1981 absent meeting the requisites of a proper class action otherwise.

Smith v. Liberty Mutual Insurance Co., Civil Action No. 17499 (N.D.Ga. March 4, 1974) (Smith, Ch. J.).

the bifurcated approach adopted with respect to the back pay aspects of this suit. As discussed in the prior order, an overbroad defining of the class may operate to deprive unnamed class members of an adequate opportunity to be heard, for under Rule 23(b)(2), they would be bound by an adverse decision on the merits. Plaintiffs argue that the potential class of past job applicants and persons who would have applied for jobs but for defendant's discriminatory policies would be barred from seeking relief in any event, assuming the employment policies in issue were determined to be non-discriminatory. This argument *may* possibly be technically correct under the principles of stare decisis; however, if the named plaintiffs were permitted to represent the proposed class, an adverse decision would *undoubtedly* bar the unnamed class members from seeking relief under the principle of res judicata. This factor is an important consideration in resolving the equitable (b)(2) aspects of this case, and it is a critical matter in determining the eventual resolution of the back pay (b)(3) aspects. It is a difficult task to ensure that the rights of the unnamed class members will be adequately protected by the notice previously ordered in this suit. Providing adequate notice to unknown job applicants and persons who would have been job applicants presents a virtually insurmountable problem at this stage in the proceeding.[3] Under these circumstances, further broadening of the tentative class definition is simply not warranted.

As noted above, plaintiffs have expressed concern that they will be precluded from presenting evidence with respect to defendant's discriminatory hiring policies. This concern is unfounded. In the first instance the prior order of this court certified a tentative class, subject to redefinition and subdivision as required, upon the introduction of appropriate evidence. This order was designed to achieve an accommodation between the need for adequate evidence of class-wide discrimination, the need for prompt certification of a class, and the protection of the unnamed class members by providing sufficient notice. The order was based in part on a finding that plaintiffs are predominately interested in securing equitable relief rather than a potential monetary award. The court thus adopted a bifurcated approach, in order to permit the (b)(2) equitable aspects of the case to proceed without imposing the cost of notice to the unnamed class members upon plaintiffs.[4] In resolving the (b)(2) aspects of the case, the court will consider evidence of employment discrimination by defendants against present employees,

---

3. It is possible that defendant has maintained listings of black persons who have applied for over-the-road jobs within the period covered by this suit. Although such a listing would greatly simplify the overall notice requirement, it would not solve the problem of providing notice to potential class members who never applied for such jobs. In the event plaintiffs seek to redefine their class after the introduction of appropriate evidence to include job applicants and black persons who would have applied for jobs but for defendant's discriminatory policies, they should submit a plan providing for adequate notice to the unnamed members of the proposed class. *See also* note 4 *infra*.

4. As noted in the November 6, 1974 order, providing notice to unnamed class members in a (b)(2) class action is optional. Defendants have not filed objections to the portion of the prior order requiring them to post preliminary notice of this action in their terminals and offices throughout the Southern Conference area. Some courts have ruled that the notice requirement in hybrid (b)(2) and (b)(3) actions should be deemed to be mandatory, and that the cost of such notice should be borne by plaintiffs. *See* Alexander v. Avco Corp., 380 F.Supp. 1282 (M.D.Tenn. 1974); Ellison v. Rock Hill Printing & Finishing Co., 64 F.R.D. 415 (D.S.C.1974); Brewer v. Republic Steel Corp., 64 F.R.D. 591 (N.D.Ohio 1974). This issue may more appropriately be considered in ruling on the back pay (b)(3) aspects of this suit.

past employees, and applicants for employment; for it is well settled in this district that denial of class action treatment does not affect the scope of remedies available under the Civil Rights Statutes. *See* Tolbert v. Western Electric Co., 56 F.R.D. 108 (N.D.Ga.1972). As a result, refusing to redefine the class at this stage in the proceeding will have no effect on the eventual disposition of the merits of this case, nor will it preclude the framing of appropriate equitable relief, nor will it preclude subsequent redefinition of the class upon the introduction of appropriate evidence. Conversely, allowing the proposed class, in addition to subjecting defendants to the anticipation of a possibly limitless award of back pay, also presents the potential for prejudice to the unnamed class members flowing from the res judicata effects of an adverse decision on the merits.

Accordingly, for the reasons hereinabove expressed, plaintiffs' motion for reconsideration is hereby denied.

It is so ordered.