Jennifer M. **RHODES**, suing by her next of friend, Ellanoria Rhodes

v.

Caspar **WEINBERGER**, Secretary of Health, Education and Welfare.

No. 74–1511.

United States District Court,
E. D. Pennsylvania.

March 19, 1975.

Leslie L. Engle, Community Legal Services, Philadelphia, Pa., for plaintiff.

Robert Forster, Jr., Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

In an Opinion and Order dated January 21, 1975, 388 F.Supp. 437, this Court certified a class pursuant to Rule 23(b)(2) composed of all those persons within the Eastern District of Pennsylvania who have been, are being, or will be denied child's insurance benefits on the account of a retirement-aged insured solely because of the provisions of 42 U. S.C. § 416(h)(3)(A). We declared that plaintiffs' certification under (b)(2) did not entitle them to press class members' claims for retroactive benefits. This restriction was in conformity with this Court's earlier decision in Paddison v. Fidelity Bank, 60 F.R.D. 695 (1973), where we said that in a class action for both injunctive and monetary relief the plaintiffs should proceed as class representatives under (b)(2) for injunctive relief alone, while litigation of the class members' monetary claims (except for the named plaintiffs') should await plaintiffs' certification under (b)(3) after defendant's liability had been established at trial. Plaintiffs herein ask us to reconsider the application of Paddison to this case, on the grounds that this case presents special circumstances not present in Paddison and because the recent decision of the Third Circuit in Wetzel v. Liberty Mutual Insurance Co., 508 F.2d 239 (3rd Cir. 1975) effectively overrules Paddison. We find that the Circuit's reasoning in Wetzel does contradict the Paddison approach, and, for the reasons discussed below, we certify plaintiffs under 23(b)(2) as representatives for the previously defined class' retroactive benefit claims as well as their injunctive and declaratory claims.

## DISCUSSION

The named plaintiffs have already been certified as representatives, under 23(b)(2), of a class composed of all those persons who have been, are being, or will be, denied child's insurance benefits by defendant Social Security Administration solely because of the provisions of 42 U.S.C. § 416(h)(3)(A). The twin sister of the section challenged herein, 42 U.S.C. § 416(h)(3)(B), was declared unconstitutional by the Supreme Court in Jimenez v. Weinberger, 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974), and this Court, upon certifying plaintiffs as class representatives, entered summary judgment in their favor, reserving the questions of whether the named plaintiffs should be awarded retroactive benefits, and, if so, from

what date. This limitation of the "monetary" issue (retroactive benefits) to the named plaintiffs only was based on this Court's earlier decision in Paddison v. Fidelity Bank, 60 F.R.D. 695 (1973). It is *Paddison's* application to the present case which is now at issue.

*Paddison* was a suit by a female employee against her employer for sex discrimination under 42 U.S.C. § 2000e. Plaintiff was certified as a class representative under 23(b)(2). Relying on the language of the Advisory Committee note to 23(b)(2) that "[this] subdivision does not extend to cases in which the appropriate final relief relates exclusively or *predominantly* to money damages." (emphasis in original), we ruled that a class designation under 23(b)(2) alone did not entitle the plaintiff to pursue past money damages on behalf of the class. That such past money damage claims were categorized as "equitable relief" for some purposes was not felt to make them any less a monetary claim for the purposes of determining whether (b)(2) or (b)(3) treatment was appropriate since Rule (b)(2) itself does not speak of equitable relief but of injunctive relief. 60 F.R.D. at 697, n. 2. We stated:

"This Court is committed to the 'across-the-board' approach to Civil Rights class actions [citation omitted]. The main characteristics of this approach are the broad definition of the class and the issues relevant thereto. The advantage of this approach is the final resolution of very broad issues of the defendant's policy. The appropriate remedial tool is the prospective injunction, supervised by the Court. To accept the implication of the . . . cases styling money damages as equitable relief for Rule 23 purposes in a Title VII situation puts the District Court on the horns of an intolerable dilemma which is no benefit to plaintiffs. Either the Court must make a broad class designation and with it create a pandora's box of problems on the issue of past damages, or it must narrow the class further than is desirable in the broad-based approach, or it must deny designation of the case under (b)(2) for what are really (b)(3) reasons. Whether past money damages can be properly styled 'equitable relief' for some purposes, this Court is convinced that for the purposes of Rule 23 the problems created by past money damages are (b)(3) problems which should be resolved by the criteria of (b)(3) in a separate and explicit determination in each case." 60 F.R.D. at 698.

Litigation of past money damages in *Paddison* was reserved until after plaintiff had prevailed on the merits (and obtained injunctive relief) and had been certified as a (b)(3) class representative.

Plaintiffs cite in support of their motion for reconsideration the recent Third Circuit decision in Wetzel v. Liberty Mutual Insurance Co., cited supra, p. 2. *Wetzel*, like *Paddison*, involved a claim of sex discrimination. The plaintiffs in *Wetzel* were certified as class representatives of all present and future women technical employees of defendant under 23(b)(2). The district court subsequently entered summary judgment against defendant but denied injunctive relief on the grounds that defendant had ceased its discriminatory practices. On appeal from the district judge's refusal to recertify the class under 23(b)(3), the Third Circuit ruled that a district court is not required to redetermine that a suit presently proceeding as a (b)(2) class action is maintainable under (b)(3) merely because changed conditions make injunctive relief inappropriate. In arriving at this conclusion, the court discussed the purposes and characteristics of (b)(2) and (b)(3) actions in terms which bear directly on the present case.

*Wetzel* plainly declares that the "language of (b)(2) does not support the

contention that (b)(2) actions are limited to final injunctive relief or declaratory judgments only." The crux is not the type of relief sought but whether the alleged conduct of the party opposing the class is such that injunctive relief is appropriate. In other words, the "making appropriate final injunctive relief" language of (b)(2) merely illustrates the preceding portion of (b)(2), merely illustrates the preceding portion of (b)(2), that "the party opposing the class has acted . . . on grounds generally applicable to the class . . .." *Wetzel* cites with approval cases [1] which have permitted (b)(2) class representatives to seek back pay as a form of equitable relief. It was these same cases which this Court refused to follow in *Paddison*.

We are convinced that the *Wetzel* decision vitiates [2] *Paddison's* injunctive relief/monetary relief dichotomy, at least in actions traditionally considered equitable in nature. Our original Memorandum and Order in this case described an award of retroactive benefits as equitable relief.[3] As such it would seem to be the kind of relief properly sought by a (b)(2) class representative. We will therefore certify plaintiffs as class representatives for the purpose of seeking retroactive benefits as well as final injunctive relief, for the class as a whole.

At the time this Court considered certification in this action, defendant requested that, if plaintiffs were certified under (b)(2) for the purpose of seeking retroactive benefits, the Court required notice to be sent to the class members, in order to allow them to "opt out" of the class (and the *res judicata* effects any judgment). Since we have now opened the question of retroactive benefits for the class, we should out of fairness deal with defendant's request. Fortunately, the *Wetzel* decision deals with this issue as well. *Wetzel* finds that due process [4] does not require notice in a (b)(2) action because the homogeneity, or cohesiveness, of the class is such that "its members would be bound either by collateral estoppel or the stare decisis effect of a suit brought by an individual plaintiff.

"Thus, as long as the representation is adequate and faithful, there is no unfairness in giving res judicata effect to a judgment against all members of the class even if they have not received notice." *Wetzel*, at 256.

The class in the present suit is sufficiently homogeneous so that it is fair not to require that they be given a chance to opt out of the suit. In fact, to give them such a chance would defeat one of the major purposes of the class action, that of eliminating the possibility of repetitious litigation. *Wetzel* at 249.

---

1. Robinson v. Lorillard Corp., 444 F.2d 791 (4th Cir. 1971), petition for cert. dismissed, 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655 (1972); Bowe v. Colgate-Palmolive Co., 416 F.2d 711 (7th Cir. 1969).

2. The only feature of Paddison which has applicability to the "equitable claim" situation after Wetzel is the Court's discretionary power to bifurcate the trial into liability and damage portions.

3. In his Supplemental Memorandum in Opposition to Class Action certification defendant contends that retroactive social security benefits are not a form of equitable relief. Defendant bases this contention on the majority opinion in Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), which states that labelling retroactive benefits "equitable restitution" does not avoid the Eleventh Amendment's prohibition against citizen suits against a state. We do not believe that *Edelman* holds that an award of past benefits is not within a court's equity powers, but merely that these more flexible equity powers do not guarantee that all Eleventh Amendment problems will be eliminated. As we stated in our Memorandum of Jan. 31, 1975, no Eleventh Amendment concerns are present in this case.

4. Specifically, the Supreme Court's decision in Mullane v. Central Hanover & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).