Jennifer M. RHODES, suing by her next of friend Ellanoria Rhodes, et al.

v.

Caspar WEINBERGER, Secretary of Health, Education and Welfare.

Civ. A. No. 74–1511.

United States District Court,
E. D. Pennsylvania.

Jan. 21, 1975.

438

Leslie L. Engle, Community Legal Services, Inc., Philadelphia, Pa., for plaintiffs.

Robert S. Forster, Jr., Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM

NEWCOMER, District Judge.

This is one of those fortunately rare cases in which defendant's concession of liability creates more problems than it solves. Plaintiffs Jennifer Rhodes and Clara and Bernice Brogdon are illegitimate minors whom defendant denied child's insurance benefits solely because their natural father had not acknowledged them or no finding of paternity had been made one year prior to their father's eligibility for retirement insurance. A restriction identical to the one which barred these plaintiffs' eligibility was recently found unconstitutional by the Supreme Court, Jimenez v. Weinberger, 417 U.S. 628, 94 S.Ct. 2496, 41 L. Ed.2d 363 (1974), and defendant has conceded that the section involved in this case, 42 U.S.C. § 416(h)(3)(A), is likewise invalid. An affidavit sworn to by the Deputy Director of the Social Se-

curity Administration's Bureau of Retirement and Survivors Insurance states that the *Jimenez* decision permits, "prospectively", an otherwise qualified illegitimate minor to obtain child's insurance benefits without fulfilling the requirements of § 416(h)(3)(A). The affidavit explains that "appropriate instructions necessary to effectuate" the change in policy due to *Jimenez* "are being prepared". Defendant contends that his admission of unconstitutionality moots plaintiffs' request for injunctive relief, prevents plaintiffs' claims from being typical of those of the class they seek to represent, and deprives this Court of jurisdiction in that defendant's sovereign immunity precludes a suit for retroactive benefits, the only type of relief which, defendant maintains, plaintiffs can still seek. Defendant also asserts that even assuming sovereign immunity does not bar plaintiffs' retroactive benefits claim, plaintiffs cannot base jurisdiction over this claim on any federal statute. Plaintiffs have vigorously opposed defendant's motion to dismiss and have filed for certification of class and for summary judgment on the issue of liability.

Contrary to defendant's arguments, we are of the opinion that plaintiffs' prayer for an injunction is not moot, that this Court can hear a claim for retroactive benefits as a part of plaintiffs' injunction claim, and that plaintiffs are proper representatives, under Federal Rule 23(b)(2), of a class of those who have or will be denied child's insurance benefits pursuant to 42 U.S.C. § 416(h)(3)(A). We will therefore certify plaintiffs as representatives of such a class and grant plaintiffs' motion for summary judgment on the issue of liability, reserving for a future proceeding the tasks of determining the form and scope of an injunction and the amount of retroactive benefits to which the named plaintiffs may be entitled.

a. *The Challenged Statute.*

An examination of the statutory scheme for determining eligibility for child's insurance is required before the facts of this case can be understood. The Social Security Act provides that every dependent "child" of a wage earner entitled to old-age insurance may file for child's insurance benefits. 42 U.S.C. § 402(d). The statute's definition of "child" includes any natural or adopted child and any individual who could qualify as a child under the intestacy laws of the wage earner's state of domicile, 42 U.S.C. § 416(h)(2)(A), or who is the offspring of a marriage which would be valid but for non-obvious defects in the marriage ceremony. 42 U.S.C. § 416(h)(2)(B). If a minor, such as each of the plaintiffs herein, does not qualify as a child under this definition he or she may still obtain benefits if the wage earner upon whose account they are claiming has acknowledged his paternity or if a court has declared such paternity or required support payments because of such paternity *at least one year prior to* the time the wage earner first became entitled to retirement insurance benefits (Or reaches age 65, whichever is earlier).

The Supreme Court in *Jimenez,* cited *supra,* found unconstitutional 42 U.S.C. § 416(h)(2)(B), which required that illegitimate children whose relation to the wage earner had not been acknowledged or officially declared before the wage earner became eligible for disability benefits could not obtain child's insurance benefits. The Court stated that this section, when read in conjunction with 402(d)(3)(A) and 416(h)(2)(A) and (h)(2)(B), discussed *supra,* created two classes of illegitimate children born after the wage earner's eligibility for disability payments. The first class consisted of after-born illegitimates who could qualify for benefits because they could inherit property under state intestacy laws or because their parents' marriage was technically invalid. The second class consists of all remaining after-born illegitimate children, who were conclusively barred from benefits by 42 U.S.C. § 416(h)(3)(B). The Court found that this classification of after-

born illegitimates was not rationally related to any legitimate interest of the Social Security Administration and thus deprived the second class of equal protection of the laws guaranteed them by the Fifth Amendment.

b. *Facts.*

The following facts are undisputed. The named plaintiff Jennifer Rhodes was found to be the natural daughter of Willie Singleton by a Court of Common Pleas of the County of Philadelphia on October 20, 1969. Jennifer Rhodes, by her mother, Ellanoria Rhodes, first filed for child's insurance benefits under 42 U.S.C. § 402(d) on November 29, 1974, as a dependent child of the insured wage earner Willie Singleton, who himself had become entitled to Social Security retirement benefits in September, 1967. That application, and a later re-application, were denied by the Social Security Administration because the finding of paternity had not been made at least one year prior to the wage earner parent's attainment of age 65 or entitlement to benefits as was required by 42 U.S.C. § 416(h)(3)(A). Willie Singleton died in January, 1974, and his child, Jennifer Rhodes, applied for and is presently receiving survivor's benefits under 42 U. S.C. § 416(h)(3)(C).

Named plaintiffs Clara and Bernice Brogdon are the youngest of five acknowledged, illegitimate children of Pearl Brogdon and the insured wage earner Clarence Glasgow, who himself became entitled to retirement benefits in October, 1962. In August, 1965, Clarence Glasgow filed applications on behalf of Clara and Bernice Brogdon, as well as the three older children, for child's insurance benefits under 42 U.S. C. § 402(d). Those applications were initially denied, but after a hearing held in September, 1967, the three older children were found to be entitled to benefits under 42 U.S.C. § 416(h)(3)(A). Clara and Bernice Brogdon were denied those benefits for the failing to meet the time requirements of 42 U.S.C. § 416(h)(3)(A), in that they were born after the wage earner parent, Clarence Glasgow, had become entitled to Social Security benefits. Clarence Glasgow died on December 24, 1968.

The complaint in this matter was filed in this Court on June 17, 1974, two days before the Supreme Court announced its opinion in *Jimenez.*

I. *Subject Matter Jurisdiction*

Defendant contends that the affidavit stating that 42 U.S.C. § 416(h)(3)(A) is invalid and that "appropriate regulations are being prepared" to implement a change in the Bureau's policy moots plaintiffs' request for declaratory and injunctive relief, leaving retroactive benefits as the only remedy remaining to plaintiffs. Defendant further asserts that plaintiffs cannot pursue this remedy against the federal government both because the government as a sovereign has not consented to such a suit and because plaintiffs have alleged no jurisdiction statute which will support such a suit.

i. mootness.

█ It would seem that defendant's admission is insufficient to meet the criterion of mootness established by United States v. W. T. Grant, 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953). *Grant* set forth three criteria for a finding of mootness: the good faith of the announced intent to discontinue the challenged activity; the effectiveness of the discontinuance; and, in certain cases, the character of the past violations. Plaintiffs have raised substantial questions as to the effectiveness of defendant's discontinuance. For example, defendant has not specified the means by which its policy will change nor has it indicated how those who have been denied benefits in the past and who are still eligible would be notified of this change, if, indeed, defendant plans to notify them at all. The fact that these issues, among others, remain unresolved indicates that there is room for an in-

junction in this case and that plaintiffs' claim for injunctive relief has not been mooted.

### ii. sovereign immunity.

■ Defendant's position is that the retroactive benefits sought by plaintiffs are, in essence, money damages, and thus cannot be awarded against the United States without its consent. In support of this proposition defendant relies heavily on Larson v. Domestic and Foreign Commerce Corporation, 337 U. S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1948). In *Larson,* the Court upheld the dismissal of a suit to enjoin the Administrator of the War Assets Administration from selling elsewhere surplus coal contracted for by the plaintiff therein. The Court ruled that the doctrine of sovereign immunity bars a suit for specific performance against a federal officer acting in his official capacity. However, the Court went on to outline three situations where sovereign immunity would not bar such a suit: where the federal officer is acting in his own capacity as an individual; where he is acting beyond the scope of his official duties; and where, as here, his actions are taken under a statute or order claimed to be unconstitutional. As an exception to these exceptions, the Court stated:

> "Of course, a suit may fail, as one against the sovereign . . . if the relief requested cannot be granted by merely ordering the cessation of the conduct complained of but will require affirmative action by the sovereign or the disposition of unquestionably sovereign property. North Carolina v. Temple, 1890, 134 U.S. 22, 10 S.Ct. 509, 33 L.Ed. 849." 337 U.S. at 691, 69 S.Ct. at 1462. (fn.).

First, this "unquestionably sovereign property" caveat seems to have vanished in subsequent Supreme Court discussions of sovereign immunity. State of Hawaii v. Gordon, 373 U.S. 57, 83 S.Ct. 1052, 10 L.Ed.2d 191 (1963); Dugan v. Rank, 372 U.S. 609, 83 S.Ct. 999, 10 L. Ed.2d 15 (1963); Malone v. Bowdoin,

369 U.S. 643, 82 S.Ct. 980, 8 L.Ed.2d 168 (1962). In *Malone,* cited *supra,* the Court stated:

> "[*Larson*] expressly postulated the rule that the action of a federal officer affecting property claimed by a plaintiff can be made the basis of a suit for specific relief against the officer as an individual only if the officer's action is 'not within the officer's statutory powers or, if within those powers, only if the powers, or their exercise in the particular case, are constitutionally void'". 369 U.S. at 647, 82 S.Ct. at 983.

Second, it is unclear whether *Larson* and its progeny even apply to a case such as the present one. Each of the Supreme Court cases cited above, as well as the North Carolina v. Temple case, cited in *Larson,* involved specific performance suits over property owned or seized by the sovereign in which the plaintiff claimed an interest. The Court in *Larson* distinguished these suits from suits for monetary damages by stating:

> It is argued that the principle of sovereign immunity is an archaic hangover not consonant with modern morality and that it should therefore be limited wherever possible. There may be substance in such a viewpoint as applied to suits for damages . . . but the reasoning is not applicable to suits for specific relief.
>
> . . .
>
> For, it is one thing to provide a method by which a citizen may be compensated for a wrong done to him by the Government. It is a far different matter to permit a court to exercise its compulsive powers to restrain the Government from acting, or to compel it to act." 337 U.S. at 703–704, 69 S.Ct. at 1468.

Although retroactive benefits are a form of equitable relief, see discussion at pages 443, 444, they are more akin to damages then to the type of specific relief which the Court was discussing.

Leaving aside the question of whether the Courts "unquestionably sovereign

**442**

property language" applies to an award of money damages as well as a grant of specific performance, it has not been viewed as a bar by those courts awarding retroactive benefits in Social Security cases similar to this one. Salfi v. Weinberger, 373 F.Supp. 961 (N.D.Cal. 1974), probable jurisdiction noted, 419 U.S. 992, 95 S.Ct. 301, 42 L.Ed.2d 264; Griffin v. Richardson, 346 F.Supp. 1226 (D.Md.1972), aff'd 409 U.S. 1069, 93 S. Ct. 689, 34 L.Ed.2d 660 (1972); Morris v. Richardson, 346 F.Supp. 494 (N.D. Ga.1972), vac. and rem. on other grounds, 409 U.S. 464, 93 S.Ct. 629, 34 L.Ed.2d 647 (1973). In fact, the Three-Judge Court in *Jimenez,* upon the remand of that case from the Supreme Court, ordered the Secretary of H.E.W. to provide retroactive benefits to those who had been denied benefits since the suit's inception.

Defendant cites the recent case of Edelman v. Jordan, 415 U.S. 651, 94 S. Ct. 1347, 39 L.Ed.2d 662 (1974), in support of its sovereign immunity claim. However, *Edelman* involved an award of benefits unconstitutionally denied in the past from a state treasury. The Court said that the Eleventh Amendment prohibited such an award even if it was a form of equitable restitution. We do not believe that *Edelman,* which was decided on Eleventh Amendment grounds rather than on the more general sovereign immunity doctrine, should be construed to bar any suit which would compel payments from the federal treasury.

iii.   statutory basis of jurisdiction.

Plaintiffs acknowledge that the terms of the Social Security Act itself preclude them from suing upon that Act, 42 U.S. C. §§ 405(g), 405(h). Section 405(g) states:

"Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such

further time as the Secretary may allow."

Section 405(h) states:

"The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 41 of Title 28 [the section of the Judicial Code defining the jurisdiction of the Federal district courts which has been superseded by section 1331 *et seq.* of new Title 28 U.S.C.]. to recover on any claim arising under this subchapter."

Sections 404.901 et seq. of Social Security Administration Regulations No. 4, 20 C.F.R. 404.901 et seq., set forth a four-step administrative process by which a claimant for benefits under the Act may obtain a "final decision" of the Secretary. Following an initial determination on his claim (Section 404.905 of Social Security Administration Regulations No. 4, 20 C.F.R. 404.905) a dissatisfied claimant may obtain reconsideration (Section 404.914, 20 C.F.R. 404.-914). Subsequent to a reconsidered determination, an individual may request a hearing *de novo* before an independent administrative law judge (Section 404.-917, 20 C.F.R. 404.917) and review by the Appeals Council of the Social Security Administration (Section 404.945, 20 C.F.R. 404.945).

None of the plaintiffs in the instant case obtained a final decision of the Secretary. Plaintiff Rhodes pursued her claim through a reconsideration determination dated March 22, 1974, and then commenced this action. The claim filed on behalf of Clara and Bernice Brogdon was not pursued subsequent to the decision of the hearing examiner on November 27, 1967. Thus, there has been no "final decision" pursuant to section 205(g).

However, defendant goes on to claim that § 405(h) prevents judicial review of Social Security Administration actions under any other statute unless [1] a claimant has fulfilled the requirements of § 405(g). With one exception,[2] the courts have declined to accept this position where the parties have had an opportunity to develop a complete factual record in the administrative agency proceedings, where the only question remaining is a constitutional one on which the agency has no special expertise, and where recourse to the agency's review procedures would be futile. Salfi v. Weinberger, 373 F.Supp. 961 (N.D. Cal.1974), probable jurisdiction noted 419 U.S. 992, 95 S.Ct. 301, 42 L.Ed.2d 264 (1974); Williams v. Richardson, 347 F.Supp. 544 (W.D.N.C.1972); L. Jaffe, Judicial Control of Administrative Action 424–458 (1965).

■■ This Court unquestionably has jurisdiction over plaintiffs' prayer for declaratory and injunctive relief under 28 U.S.C. § 1361. Mandamus clearly lies to compel the Secretary to cease enforcing an unconstitutional statute. Richardson v. U. S., 465 F.2d 844, 850 (3rd Cir. 1972), rev'd. on other grounds, 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974). However the jurisdictional basis of plaintiffs' retroactive benefits claim is more problematical. Several Courts faced with attacks on the Social Security Act's eligibility sections have awarded benefits retroactively as part of a decree enjoining the application of the section found to be unconstitutional. See cases cited at p. 441. These courts thus seem to find the power to award such benefits from the same source from which they find the power to issue an injunction, i. e., their general equity powers.

■ Once jurisdiction exists for the issuance of an injunction under § 1361, and liability has been found, a court may, under certain circumstances, give the injunction retroactive effect. Chevron Oil Co. v. Huson, 404 U.S. 97, 92 S. Ct. 349, 30 L.Ed.2d 296 (1971). This power, entailing as it does the payment of past benefits, does not appear to have been diminished by the Supreme Court in Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), discussed supra, p. 442. While the majority decision in that case declared that a court could not avoid the Eleventh Amendment's stricture against awarding "equitable restitution", it did not address the question of whether the award of past benefits as equitable restitution was proper in the absence of Eleventh Amendment considerations. Therefore, this Court will follow those courts which have found the power to award retroactive benefits as inherent in their power to issue an injunction.

## II. *Class Action Status*

■ Plaintiffs have moved for certification as representatives of a class consisting of all those who have been, are being, or will be denied child's insurance benefits solely because of 42 U.S.C. § 416(h)(3)(A). Defendant argues that since all named plaintiffs are presently receiving survivor's benefits and are thus not entitled to prospective child's insurance benefits, their claims are not typical of those of the class. We find this argument unconvincing.

---

1. Defendant also contends that § 405(h) bars review under any other jurisdictional statute regardless of whether § 405(g) has been satisfied. This position is universally rejected. Griffin v. Richardson, 346 F.Supp. 1226 (Md.1972), aff'd 409 U.S. 1069, 93 S.Ct. 689, 34 L.Ed.2d 660 (1972); Morris v. Richardson, 346 F.Supp. 494 (N.D.Ga.1972), vac. and rem. on other grounds, 409 U.S. 464, 93 S.Ct. 629, 34 L.Ed.2d 647, Severance v. Weinberger, 362 F.Supp. 1348 (D.C.D.C. 1973).

2. The exception is Bartley v. Finch, 311 F. Supp. 876 (E.D.Ky.1970), where a Three-Judge Court ruled that it lacked jurisdiction because plaintiffs failed to exhaust their administrative remedies. The Court then went on to decide against plaintiffs on the merits. On appeal, the Supreme Court affirmed on the merits, 404 U.S. 980, 92 S.Ct. 442, 30 L.Ed.2d 364 (1971), thus implicitly deciding that jurisdiction was proper.

Plaintiffs are being directly affected by the enforcement of the section in question and can only recover the benefits allegedly due them if the operation of the challenged section is enjoined. The named plaintiffs thus have the same goal as those class members who will be entitled to benefits in the future—the cessation of the section's enforcement.

However, while plaintiffs appear to be adequate class representatives for purposes of Rule 23(b)(2), their claim for retroactive benefits on behalf of the entire class exceeds the relief available to the class in a (b)(2) class action. Paddison v. Fidelity Bank, 60 F.R.D. 695 (E.D.Pa.1973). Paddison established the principle, in this Court at least, that the Rule 23(b)(2) category is most efficiently and faithfully used to determine the legality of a practice of general applicability and should not be burdened with such typically (b)(3) problems as determination of individual damage claims, whether or not such claims are styled as equitable. Paddison limits a Rule (b)(2) class representative to injunctive relief, as well as any monetary damages which he himself may have suffered, and leaves the plaintiff free to apply for (b)(3) certification if and when defendant's liability is determined in plaintiff's favor. The fact that we have found, as discussed above, see pp. 442, 443, that our jurisdiction to award past benefits depends on equitable principles does not change this Court's policy of postponing the litigation of class members' monetary claims until the determination of defendant's liability. As stated in Paddison:

> "Whether past money damages can be properly styled 'equitable relief' for some purposes, this Court is convinced that for the purposes of Rule 23 the problems created by past monetary damages are (b)(3) problems which should be resolved by the criteria of (b)(3) in a separate and explicit determination in each case." 60 F.R.D. at 698.

Those courts awarding retroactive benefits have not clearly articulated the circumstances which warrant such an award, nor have they decided in a uniform fashion how retroactive retroactivity should be. Salfi v. Weinberger, cited supra, pp. 441, 442 (benefits payable from date of original entitlement); Griffin v. Richardson, cited supra, p. 442 (payable from date of original entitlement); Jimenez v. Weinberger, cited supra, p. 442 (benefits payable from date of filing of suit only).

There is no valid reason why these questions, as well as the question of how much benefits each individual class member is entitled to, should be resolved in a (b)(2) context, particularly when it is remembered that under (b)(2) the class members will receive no notice that their individual claims are being adjudicated. For these reasons, we will certify plaintiffs as class representatives under Rule 23(b)(2), and withhold considering the question of whether the class members should be awarded retroactive benefits or the amount of any such award until such time as plaintiffs are certified under 23(b)(3).

### III. Summary Judgment

■ Plaintiffs have moved for summary judgment on the constitutionality of 42 U.S.C. § 416(h)(3)(A). It is clear from a reading of the pleadings and affidavits, including the affidavit of the Deputy Director of the Retirement and Survivors Insurance Bureaus, that there are no contested facts and that section 416(h)(3)(A) is constitutionally invalid.

### IV. Three-Judge Court

■ If, as is the case here, the challenged federal statute is clearly and unquestionably unconstitutional, a three-judge court need not be convened. Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962).

This would be true even if defendant had not conceded unconstitutionality, but his admission removes all doubt on this issue.