Elsie D. HORTON, Timothy L. Horton, and Tammy Horton, Plaintiffs,

v.

Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 78–0107–A.

United States District Court,
W. D. Virginia,
Abingdon Division.

June 4, 1979.

**340**

Stephen E. Arey, Harman & Harman, Tazewell, Va., for plaintiffs.

Robert S. Stubbs, Asst. U. S. Atty., Roanoke, Va., for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

Plaintiffs Elsie D. Horton, Timothy L. Horton, and Tammy Horton have brought this action challenging the final decision of the defendant Secretary of Health, Education and Welfare. This court has jurisdiction under 42 U.S.C. § 405(g), and the case is currently before the court on cross motions for summary judgment pursuant to Fed.R.Civ.P. 56.

## I. STATEMENT OF FACTS

The facts of this case are essentially undisputed. The wage earner Joe E. Horton filed an application for disability insurance benefits under the Social Security Act on August 28, 1964. Benefits were subsequently awarded. In an opinion which constitutes the final decision of the Secretary, the Social Security Administration's Appeals Council found the date of disability onset to be August 13, 1964.[1] On May 19, 1970, Joe E. Horton filed an application for black lung benefits under the Federal Coal Mine Health and Safety Act of 1969, *as amended*, 30 U.S.C. § 901 *et seq.* Benefits were subsequently awarded retroactive to the month of application. On the basis of these two benefit awards, children's benefits were later awarded to Timothy C. Lowe, Joe E. Horton's step-son by virtue of his marriage to Elsie Horton, and Tammy Horton, a natural child of the couple's marriage.[2] These two children and their mother are the named plaintiffs in this action.

From about 1959 to 1963, Joe E. Horton had lived with Juanita Van Dyke. Peggy Ann Horton and Larry Earl Horton were born to Juanita Van Dyke during this period. The children's birth certificates indicate that Joe E. Horton is their father. However, the children were clearly born out of wedlock. Under the laws of the State of Virginia in effect at the time of Joe E. Horton's disability onset and black lung eligibility, these two children would not have been entitled to maintain a claim of succession based on their relationship to Joe E. Horton. Va.Code Ann. § 64.1–5 (Repl.Vol. 1973) *repealed*, Acts of Assembly, 1978, c. 647.[3] In 1965 and 1967, applications for children's benefits under the Social Security Act were filed on behalf of both Larry and Peggy Horton on the basis of Joe E. Horton's wage earner's account. On both occasions, both applications were denied on the basis of the determination that the children were illegitimate and not dependent on Joe E. Horton at the time of disability onset.

On April 9, 1975, Juanita Van Dyke again filed application for children's benefits on behalf of Peggy and Larry Horton. Despite Joe E. Horton's denial of paternity,

---

1. While the administrative record itself contains no indication as to the date of onset, neither side contests the Appeals Council's finding. Indeed, since benefits were first paid for the month of March, 1965, the Appeals Council's finding would seem consistent with the provisions of 42 U.S.C. § 423(c)(2).

2. Child's benefits awarded on the basis of the disability insurance award to a second step-child are not involved in this case. Apparently, Timothy C. Lowe was later adopted by Joe E. Horton and hereinafter will be referred to as Timothy Horton.

3. Section 64.1–5 of the Code of Virginia was repealed in 1978 and replaced by Section 64.1–5.1. The Virginia Legislature took such action in an apparent effort to conform to the requirements of *Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977), a decision that declared unconstitutional a state intestacy statute allowing illegitimates to inherent only from their mother.

the initial administrative determination resulted in an award of children's benefits to both of the illegitimate children. That award necessitated a reduction of monthly benefits received by the named plaintiffs. On reconsideration, the initial determination was upheld on the basis of the Supreme Court decision in *Jimenez v. Weinberger*, 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974). A similar series of events eventually led to an award of dependent's black lung benefits to Peggy and Larry Horton with a concomitant reduction of monthly benefits to Timothy and Tammy Horton.

Upon plaintiffs' appeal of the reconsideration decision, a hearing encompassing both the disability and black lung determinations was conducted on October 29, 1976. In a decision dated April 13, 1977, an administrative law judge reversed the earlier determinations and held that the illegitimate children were not entitled to children's benefits. While the law judge found that Joe E. Horton had acknowledged both illegitimate children at a point after the onset of disability, the law judge denied entitlement on the basis of the finding that Joe E. Horton was neither living with nor contributing to the support of the illegitimate children at the time of onset of the period of disability. *See* 42 U.S.C. § 416(h)(3)(B).

On January 16, 1978, the Social Security Administration's Appeals Council informed plaintiffs that it was reopening the case for further evaluation, pursuant to the authority of 20 C.F.R. § 404.957(b). *See also* 20 C.F.R. § 410.672(a) (black lung). The Appeals Council adopted the law judge's findings regarding the fact and time of Joe E. Horton's acknowledgment of the illegitimate children. However, the Appeals Council reversed the law judge on the basis of its conclusion of law that the Supreme Court had eliminated as unconstitutional the statutory requirement of actual dependency for after-acknowledged illegitimate children seeking children's benefits, as reflected in the case of *Jimenez v. Weinberger, supra.* Thus, the Appeals Council reinstated the reduction of plaintiffs' benefits.

Plaintiffs now complain to this court that the reduction of their benefits was improperly effected under the governing statutory and administrative provisions.

## II. PRELIMINARY CONSIDERATIONS

■ Plaintiffs have raised two-threshold objections to the final administrative determination which are of little consequence. Plaintiffs contend that the Appeals Council improperly reopened the law judge's determination of April 13, 1977. However, since the Appeals Council undertook to reopen the matter within a year, no "good cause" need have been shown as required for reopenings after expiration of a year. *See* 20 C.F.R. §§ 404.957 and 410.672. Clearly, the Appeals Council's reopening of the matter was both regular and proper.

■ Plaintiffs also contend that the finding of Joe E. Horton's acknowledgment of the paternity of the two illegitimate children is not supported by "substantial evidence." The record clearly establishes to the contrary. While the law judge did not consider it to be conclusive, the children's birth certificates list Joe E. Horton as their father. He did find it conclusive that on his applications for disability insurance benefits, and in supplemental statements, Joe E. Horton stated that Peggy and Larry Horton were his children. Joe E. Horton paid the hospital bills when those children were born. At the time of his disavowals of paternity, Joe E. Horton's statements were obviously self-serving. The Secretary's finding of acknowledgment is supported by "substantial evidence" and must therefore be affirmed. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Laws v. Celebrezze*, 368 F.2d 640 (4th Cir. 1966). Consequently, the court must direct its attention to the propriety of the Secretary's conclusions of law.

## III. STATUTORY PROVISIONS

A review of the statutory matrix governing illegitimate children's benefits is crucial to an understanding of this case. 42 U.S.C. § 402(d)(1) sets forth the criteria for the granting of children's disability insurance

benefits, and 42 U.S.C. § 402(d)(1) requires an applicant to be a disabled wage earner's "child" who is "dependent" on the wage earner. Thus, in order to receive benefits, an illegitimate must qualify under the Act as a "child" who is "dependent" on the wage earner.

The determination of an illegitimate's status as a wage earner's "child" is made by reference to a number of statutory subsections, any one of which is sufficient to qualify an individual as a "child." The illegitimate is a "child" if the illegitimate can inherit personal property from the wage earner under the relevant state's intestate laws, 42 U.S.C. § 416(h)(2)(A), or if the applicant's parents' marriage is invalid only because of a mere legal impediment. 42 U.S.C. § 416(h)(2)(B). If an illegitimate cannot fit under these two subsections, he may still establish himself as a "child" by showing that—*before the wage earner's disability began*—the wage earner acknowledged the illegitimate, 42 U.S.C. § 416(h)(3)(B)(i)(I), or that a court decreed the wage earner to be his father, 42 U.S.C. § 416(h)(3)(B)(i)(II), or that a court ordered the wage earner to support the illegitimate. 42 U.S.C. § 416(h)(3)(B)(i)(III). As a final resort, an illegitimate may attain the status of "child" by proving that the wage earner was living with the illegitimate or contributing to his support *when the wage earner became disabled.* 42 U.S.C. § 416(h)(3)(B)(ii).

Qualifying under the statute as the wage earner's "child" is a necessary condition to an illegitimate's receiving benefits; however, it is not sufficient, for an illegitimate must be "dependent" on the wage earner as well. The status of a "dependent" is conferred by 42 U.S.C. § 402(d)(3) upon every "child," unless the wage earner was not living with or contributing to the child's support and the child is not legitimate. However an illegitimate who qualifies as a child under Section 416(h)(2)(B) or Section 416(h)(3) is deemed to be a legitimate child, who is thereby deemed dependent by operation of Section 402(d)(3).

Therefore, under the statutory scheme, if an illegitimate can qualify as a "child" under 42 U.S.C. § 416(h)(3)(B), he will automatically be deemed "dependent" and will therefore be qualified for benefits, if of course he is otherwise qualified under the Act. In the instant case, this court's scrutiny is brought to bear on Section 416(h)(3)(B) because of two illegitimates' failure to fit within its terms.

The Horton illegitimate children's claims should have been denied under a strict application of the governing statutory matrix, exclusive of the question of statutory constitutionality. The Horton illegitimates were neither legitimate nor, as previously noted, entitled to maintain a claim of succession based on their relationship to their father under the applicable state laws at the time of their applications. Moreover, their illegitimacy did not arise as a result of a legal impediment in their parents' marriage. The insured individual Joe E. Horton has never been judicially decreed to be the father of the children, nor has any court ordered the insured individual to provide support to the children. The Secretary's uncontested finding is that Joe E. Horton was not providing support to the children at the time of the onset of his disability. The record contains no indication that Joe E. Horton was cohabiting with the illegitimates at the time of his disability onset.

The controversy in the case at bar arises because the Horton children were found to have been acknowledged in writing by the wage earner Joe E. Horton. Under 42 U.S.C. § 416(h)(3)(B)(i)(I) this alternative failed the Hortons because the Secretary found that the acknowledgment took place *after* Joe E. Horton's disability onset; the statute requires that acknowledgment take place *before* disability. The plaintiffs contend that, contrary to the Appeals Council's decision, the Social Security statutes as applied to the Horton illegitimates do not offend the Constitution. The defendant Secretary maintains that 42 U.S.C. § 416(h)(3)(B) is unconstitutional in that it discriminates unfairly against illegitimates in a manner contrary to the Equal Protection Clause of the Fourteenth Amendment.

This court deals separately with the social security benefits and the black lung benefits below.

## IV. SOCIAL SECURITY BENEFITS

■ The court now addresses the issue of whether an illegitimate child, acknowledged after the wage earner's onset of disability, is constitutionally entitled to social security disability benefits on the acknowledgment basis alone, even though the statute expressly precludes such an illegitimate from enjoying benefits.

In evaluating the constitutionality of the statutory scheme that is under attack here by the defendant Secretary, this court must first determine the appropriate standard of constitutional scrutiny. Next, the court must identify the permissible statutory purposes and examine the means by which the statute purports to carry out the statutory purposes. Finally, the court must decide whether there is a sufficient degree of relationship between the statutory purpose and the statutory means.

### A. The Standard of Constitutional Scrutiny

Generally, the Supreme Court has adopted a two tier approach to evaluating Equal Protection challenges to statutory classifications. The less demanding form of review, referred to as the "rational relationship" test, requires a court to ask only whether it is conceivable that the statutory classification bears a rational relationship to a permissible governmental end. The other, more exacting test, called "strict scrutiny", engages the reviewing court in an independent determination of the degree of relationship which the classification bears to a constitutionally compelling end. A court employing the "strict scrutiny" test will not defer to the decisions and empirical judgments of other governmental bodies such as the legislature. *See* J. Nowak, R. Rotunda, J. Young, *Constitutional Law*, p. 524 (1st ed. 1978). "Strict scrutiny" is reserved for cases involving laws that operate to the disadvantage of suspect classes or interfere with the exercise of fundamental constitutional rights and liberties. *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973).

The Supreme Court has determined that a statutory classification scheme based on illegitimacy need not be subjected to "strict scrutiny." *Lalli v. Lalli*, 439 U.S. 259, 99 S.Ct. 518, 520, 58 L.Ed.2d 503 (1978); *Trimble v. Gordon*, 430 U.S. 762, 767, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977); *Mathews v. Lucas*, 427 U.S. 495, 506, 96 S.Ct. 2755, 49 L.Ed.2d 651, (1976). It appears that classifications based on illegitimacy may survive constitutional scrutiny if that classification is rationally related to a legitimate state purpose. *Weber v. Aetna Casualty and Surety Co.*, 406 U.S. 164, 172, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972). However, the rational relationship test has been held to be only a "minimum" standard in that the Court "sometimes requires more" so as to insure that the judicial review is not "toothless." *Trimble v. Gordon*, 430 U.S. at 767, 97 S.Ct. 1459. It can be concluded that while classifications premised on illegitimacy need not survive the strictest scrutiny, such classifications occupy a middle tier requiring more active judicial inspection than normally applicable in the rational relationship test.

### B. The *Jimenez* Decision

Having outlined the general standard of judicial review, this court now looks to the specific task of evaluating the classifications set up by the Social Security statute under attack here, 42 U.S.C. § 416(h)(3)(B). In *Jimenez v. Weinberger*, 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974), the United States Supreme Court considered the constitutionality of the very statute at issue in the instant case; therefore, a careful analysis of *Jimenez* is essential to the decision in this case.

In *Jimenez*, the illegitimates had been born after the onset of their father's disability. The father acknowledged the children as his own, lived with them, and contributed to their support. Under the Social Security Act provisions summarized in Part

III of this opinion, *supra*, the Jimenez children were conclusively precluded from establishing entitlement to benefits because they were not even in existence when their father became disabled and therefore could not possibly show that (1) they had been acknowledged *prior to their father's disability onset*, or that (2) they were receiving support from or cohabiting with their father *at the time of his disability onset*. The Court concluded that such a result constituted a denial of equal protection as guaranteed by the Due Process Clause of the Fifth Amendment.

The Court analyzed the *Jimenez* problem by first noting that the primary purpose of the Social Security Act is to provide support for dependents of a disabled wage earner. The Court observed that the Act divided afterborn illegitimate children into two sub-classifications: (1) Those who could inherit under state intestacy laws, those who were legitimate under state law, or those who were illegitimate only because of some formal defect in their parents' ceremonial marriage, and (2) those afterborn illegitimates who did not fall within the first subclass. The Court found a fatal constitutional infirmity in the Act's operation: the Act was overly generous to the first subclass, because it deemed those class members to be dependent and thereby entitled to benefits whether or not the members were in fact dependent, but the second subclass was *conclusively* denied benefits *regardless of actual dependency*. The Court simply found that the statute was not rationally related to its avowed purpose of providing benefits for dependents.

The *Jimenez* Court recognized that the prevention of spurious claims is a legitimate governmental interest, but discounted the defendant Secretary's argument that the Act's classification of afterborn illegitimates was reasonably related to the prevention of spurious claims. The Court opined that the potential for spurious claims was exactly the same as to both subclasses of afterborn illegitimates; thus, reasoned the Court, assuming that the Jimenez illegitimates were in fact dependent on the wage earner, it would not serve the Act's purposes to conclusively deny the afterborn illegitimates an opportunity to establish their dependency and their right to insurance benefits.

This court feels that the broad interpretation of *Jimenez* advocated by the defendant Secretary is unjustified. The Secretary reads *Jimenez* as requiring that all acknowledged illegitimates be considered dependent children regardless of when they were acknowledged. The Secretary maintains that, after *Jimenez*, 42 U.S.C. § 416(h)(3)(B) now provides that an individual will be considered the wage earner's "child" if that individual is acknowledged at any time. Therefore, taking the new Section 416(h)(3)(B) in conjunction with Section 402(d)(3), which provides that a child will be deemed "dependent" if that child qualifies under Section 416(h)(3)(B), all acknowledged children are deemed dependent.

This court finds itself unable to embrace the defendant Secretary's broad interpretation of *Jimenez*.[4] In *Jimenez*, the United

---

**4.** This court has been unable to find any case interpreting and applying *Jimenez* that is similar on its facts to the case at bar.

There are several cases which contain language to the effect that *Jimenez* held 42 U.S.C. § 416(h)(3)(B) unconstitutional. *See, e.g., Tanner v. Weinberger*, 525 F.2d 51, 54 (6th Cir. 1975); *Jimenez v. Weinberger*, 523 F.2d 689, 691 (7th Cir. 1975), *cert. denied*, 427 U.S. 912, 96 S.Ct. 3200, 49 L.Ed.2d 1204 (1976); *Rhodes v. Weinberger*, 388 F.Supp. 437 (E.D.Pa.1975). *See also*, Blackwood, *Equal Protection of Illegitimates*, 24 Loy.L.Rev. 116, 121 (1978); Hallissey, *Illegitimates and Equal Protection*, 10 Univ. of Mich. J. of Law Reform 543, 558 (1977); Note, *Illegitimacy a Valid Classification for Social Security Survivorship Benefits*, 25 Kan.L.Rev. 387, 389 (1977); *The Supreme Court, 1975 Term*, 90 Harv.L.Rev. 58, 129 (1976).

However, the bare conclusion that *Jimenez* declared 42 U.S.C. § 416(h)(3)(B) to be unconstitutional does not give this court much guidance, for the courts and commentators do not detail just what part of Section 416(h)(3)(B) they believe the Court held invalid. Part of Section 416(h)(3)(B) must have been left intact, for that statutory section provides vital opportunities for illegitimates to qualify as children, e.g., acknowledgment or actual dependency.

The defendant Secretary relies on *Rhodes v. Weinberger*, 388 F.Supp. 437 (E.D.Pa.1975), for

States Supreme Court took a very narrow approach. *Norton v. Weinberger*, 390 F.Supp. 1084, 1086 (D.Md.1975), *aff'd sub nom., Norton v. Mathews*, 427 U.S. 524, 96 S.Ct. 2771, 49 L.Ed.2d 672 (1976). While the Court declared that the statutory scheme discriminated unfairly among different classes of afterborn illegitimates, the Court refrained from labeling the statute unconstitutional in its entirety.[5] Rather, the Court focused on the plight of a narrow group of afterborn illegitimates, and the Court simply remanded the case to provide the Jimenez children a chance to prove their status as "children." The Court stated:

> In the District Court the Secretary, relying on the validity of the statutory exclusion, did not undertake to challenge the assertion that appellants are the children of the claimant, that they lived with the claimant all their lives, that he has formally acknowledged them to be his children, and that he has supported and cared for them since their birth. Accordingly, the judgment is vacated and the case is remanded to provide appellants an opportunity, consistent with this opinion, to establish their claim to eligibility as "children" of the claimant under the Social Security Act.

417 U.S. at 637–8, 94 S.Ct. at 2502.

Therefore, taking the narrow language of *Jimenez* in conjunction with Congress' failure to amend Section 416(h)(3)(B) after the *Jimenez* decision, *see* n. 4, *supra*, this court is convinced that the effect of *Jimenez* is to carve out a limited exception for afterborn illegitimates, who cannot now be excluded summarily on the basis of the statute's language.

The facts of the Horton illegitimates' case falls far short of being within the *Jimenez* exception. In *Jimenez*, the illegitimates were afterborn children who had been acknowledged by their father, had lived with him since birth, and had received support from him; the Horton children were born before their wage earner father became disabled, and there is no allegation that Joe E. Horton lived with them or contributed to their support. The Horton children have not been conclusively denied benefits, for Section 416(h)(3)(B)(ii) gave them an opportunity to prove actual dependency, and they failed to do so. The Horton children's only claim rests on being acknowledged by their father *after* he became disabled. It is obvious that the facts of the instant case are far removed from the facts of *Jimenez*, and therefore this court cannot grant the Horton children benefits on the basis of *Jimenez*.

### C. Review of 42 U.S.C. § 416(h)(3)(B)(i)(I)

The decision that the narrowly drawn *Jimenez* exception does not apply to the statute was invalid. In the instant case the Secretary has submitted no affidavits that the law is unconstitutional, and the plaintiffs here vigorously contend that Section 416(h)(3)(B) is valid. Thus, the instant case is plainly distinguishable from *Rhodes*.

Furthermore, this court is puzzled as to why, if *Jimenez* declared the statute unconstitutional, the statute remains today precisely as it was written in 1974. *See* 42 U.S.C. § 416(h)(3)(B) (Cum.Supp.1974) and 42 U.S.C. § 416(h)(3)(B) (Cum.Supp.1979). This fact flies in the face of the Secretary's broad claims for *Jimenez*.

his argument that all acknowledged illegitimates, whenever acknowledged, are entitled to benefits. In *Rhodes*, the court was faced with a construction of 42 U.S.C. § 416(h)(3)(A), a subsection dealing with retirement benefits which is almost perfectly parallel to 42 U.S.C. § 416(h)(3)(B). *Rhodes* addressed two factual situations: (Case 1) the illegitimate was declared by a state court to be the retired wage earner's natural daughter *after* the wage earner became entitled to retirement benefits, and (Case 2) the illegitimate was born *after* the wage earner's entitlement to retirement benefits.

The *Rhodes* court observed that *Jimenez* had declared 42 U.S.C. § 416(h)(3)(B) to be invalid; however, the district court decision in *Rhodes* based its summary holding that Section 416(h)(3)(A) was unconstitutional on the defendant Secretary's affidavits that the statute was invalid; that is, both the *Rhodes* plaintiffs and the defendant Secretary agreed that the

**5.** *See* Podel, *Jimenez v. Weinberger: Applying a New Equal Protection Test,* 10 New England L.Rev. 561 (1974), where the author writes that "[t]he Supreme Court's decision did not declare the social security scheme unconstitutional but did remand the case in order to give Jimenez an opportunity to prove the validity of his claim." *Id.* at 562.

instant case fails to resolve the ultimate issue before this court, for it is still necessary to explore whether that part of Section 416(h)(3)(B) which aggrieves the Horton illegitimates is unconstitutional. Hence, this court focuses its attention on Section 416(h)(3)(B)(i)(I), which requires that to be a "child" the illegitimate must have been "acknowledged in writing . . . *before such insured individual's most recent period of disability began. . . .*" (Emphasis added). The Horton illegitimates have the misfortune of being acknowledged fifteen days after their wage earner father became disabled.

Therefore, this court must decide whether Section 416(h)(3)(B)(i)(I) is unconstitutional because of impermissible discrimination against illegitimates acknowledged after disability. In *Jimenez*, the Court recognized that the primary purpose of the Social Security scheme is to provide support for dependents of a disabled wage earner. 417 U.S. at 634, 94 S.Ct. 2496. The Court also accepted the prevention of spurious claims as a proper governmental interest. *Id.* at 636, 94 S.Ct. 2496. Therefore, it is fair to say that the purpose of Section 416(h)(3)(B)(i)(I) is to provide a channel to admit dependents of a disabled wage earner, while at the same time filtering out spurious claims. The statute accomplishes this by presuming that illegitimates acknowledged before disability are dependent, while illegitimates acknowledged after disability are not presumed to be dependent; after-acknowledged illegitimates are required to make a showing of dependency in fact.

This court believes that Section 416(h)(3)(B)(i)(I) is necessary to filter out spurious claims. The statute's technique of restricting the time of acknowledgment to any time before disability onset serves to eliminate fraudulent claims, for to allow acknowledgment to take place after disability would provide an opportunity for a disabled wage earner's collusive acknowledgment of another's illegitimate offspring just to derive extra social security benefits. Section 416(h)(3)(B)(i)(I) limits the opportunities for fraud, as it would take an un-

usually prescient wage earner to circumvent the preventive language of the statute by foreseeing his own impending disability and thereby colluding with another who has illegitimate children. Section 416(h)(3)(B)(i)(I) has a clearly rational basis, for to allow after-acknowledged illegitimates to be presumed to be dependent would open the floodgates for spurious claims. claims.

■ To fairly assess the position of acknowledged illegitimates in the social security scheme, this court must look beyond the confines of Section 416(h)(3)(B)(i)(I) to the rest of Section 416(h)(3)(B) in order to perceive how the whole statutory scheme fits together, for to properly construe a statute it is necessary to look at the whole law and not be guided by a single segment. *Philbrook v. Glodgett*, 421 U.S. 707, 95 S.Ct. 1893, 44 L.Ed.2d 525 (1975). Illegitimates, such as the Horton children, who have been acknowledged after disability, are not conclusively excluded from benefits, because Section 416(h)(3)(B)(ii) gives them the opportunity to prove actual dependency at the time of disability onset. Since the Hortons are not afterborn as were the *Jimenez* children, this statutory section is available to them. Therefore, actual dependents who cannot meet the timing requirements of acknowledgment can establish eligibility for benefits by proving actual dependency on the wage earner. This alternate approach is consonant with the Act's main purpose, which is to provide support for dependents of disabled wage earners.

This court recognizes that the Act places additional burdens on illegitimate children acknowledged after disability, for they must make an evidentiary showing of actual dependency if they are to get benefits. *Mathews v. Lucas*, 427 U.S. 495, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976), has held that it is not constitutionally impermissible to extend a presumption of dependency to certain classes of illegitimates while at the same time saddling other illegitimates with the burden of proving actual dependency. *Lucas* dealt with death benefits and 42

U.S.C. § 416(h)(3)(C), which sets up essentially the same categories of illegitimates as does 42 U.S.C. § 416(h)(3)(B). The *Lucas* illegitimates could not fit within any of the statutory categories which would have deemed them dependent, and they were required to prove actual dependency in order to qualify for benefits. Since the *Horton* illegitimates fall outside the acknowledgment timing requirements of Section 416(h)(3)(B)(i)(I) and cannot come within any of the other statutory sections, they are denied the status of "child" and the concomitant presumption of "dependency." Thus, the Hortons must prove actual dependency, just as the Lucas illegitimates were required to do.

In repelling the attack on Section 416(h)(3)(C), made because it deemed some illegitimates dependent but required others to prove dependency, the *Lucas* Court wrote:

> Congress' purpose in adopting the statutory presumptions of dependency was obviously to serve administrative convenience. While Congress was unwilling to assume that every child of a deceased insured was dependent at the time of death, by presuming dependency on the basis of relatively readily documented facts, such as legitimate birth, or existence of a support order or paternity decree, which could be relied upon to indicate the likelihood of continued actual dependency, Congress was able to avoid the burden and expense of specific case-by-case determination in the large number of cases where dependency is objectively probable. Such presumptions in aid of administrative functions, though they may approximate, rather than precisely mirror, the results that case-by-case adjudication would show, are permissible under the Fifth Amendment, so long as that lack of precise equivalence does not exceed the bounds of substantiality tolerated by the applicable level of scrutiny.

427 U.S. at 509, 96 S.Ct. at 2764.

*Lucas* distinguished *Jimenez* on the grounds that *Jimenez* dealt with the conclusive denial of benefits to certain afterborn illegitimates regardless of actual dependency. 427 U.S. at 511–12, 96 S.Ct. 2755. Just as the *Jimenez* element of conclusiveness was not present in *Lucas*, neither were the Horton illegitimates conclusively denied benefits solely because of their after-acknowledged status: the Hortons were allowed under the statute to prove actual dependency but failed to do so. The Hortons are prior born illegitimates, not afterborn illegitimates as in *Jimenez*.

Accordingly, since the statutory burden of proving dependency that was approved in *Lucas* is substantially the same burden placed on the Horton illegitimates, this court holds that 42 U.S.C. § 416(h)(3)(B)(i)(I) is not unconstitutional as applied to the Hortons.

## V. BLACK LUNG BENEFITS

The court now turns to the easier question of whether the Horton illegitimates are entitled to black lung benefits. In the 1972 amendments to the Federal Coal Mine Health and Safety Act, Congress provided that the determination of the status of "child" shall be made in accordance with the provisions of 42 U.S.C. § 416(h)(2) or (3). *See* 30 U.S.C. § 902(g). Joe E. Horton's black lung benefits were awarded pursuant to the 1972 amendments, as were the plaintiffs' benefits. Both plaintiffs and defendant have correctly assumed that 42 U.S.C. § 416(h)(3)(B) applied at all relevant times as to the Horton illegitimates' status as "children" for purposes of the Federal Coal Mine Health and Safety Act. *See also* 20 C.F.R. § 410.330.

It is undisputed that, although Joe E. Horton's acknowledgment of his illegitimate children occurred *after* the beginning of the period of disability established under the Social Security Act, Joe E. Horton acknowledged the illegitimates *before* the determination of his eligibility under the black lung program. The indicia of acknowledgment of the Horton illegitimates consisted of (1) Joe E. Horton's application for social security benefits dated August 28, 1964, (2) a supplemental, undated statement, (3) a statement dated September 3,

1965, and (4) Joe E. Horton's agreement dated October 14, 1961, to pay hospital bills incurred at the time of the birth of the children. Therefore, the illegitimates meet the relevant definition of "children." *See also* 20 C.F.R. § 410.330(f)(1). Hence, the illegitimates properly received black lung benefits on their father's account, and it follows that plaintiffs' benefits were properly reduced.

## VI. CONCLUSION

The court has concluded that the Secretary improperly construed the decision in *Jimenez* to apply to the factual situation presented in this case of prior born-after-acknowledged illegitimate children. It follows that plaintiffs' social security benefits were improperly reduced. However, the plaintiffs' black lung benefits were properly reduced because of the entitlement of the illegitimate children to dependent's black lung benefits.